**ADMIRALTY CONSTRUCTION, INC, by NATIONAL AMERICAN INSURANCE CO, Appellant,**

v.

**John H. DALTON, Secretary of the Navy, Appellee.**

No. 97–1111.

United States Court of Appeals, Federal Circuit.

Sept. 18, 1998.

Shannon J. Briglia, Wickwire Gavin, P.C., Vienna, Virginia, argued for appellant. With her on the brief was Brian P. Waagner.

Ronald G. Morgan, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., argued for appellee. With him on brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Kirk T. Manhardt, Assistant Director. Of counsel on the brief was Alan R. Caramella, Attorney, Naval Facilities Engineering Command, NAVFAC Litigation Headquarters Building, U.S. Department of Navy, Washington D.C.

Before PLAGER, Circuit Judge, ARCHER, Senior Circuit Judge,* and RADER, Circuit Judge.

RADER, Circuit Judge.

National American Insurance Company (National), the surety for Admiralty Construction, Inc.'s (Admiralty's) contract with the Department of the Navy, submitted a claim to the Armed Services Board of Contract Appeals (Board) on behalf of Admiralty. The Board dismissed National's claim because the doctrine of equitable subrogation did not allow National to pursue Admiralty's rights in that forum, particularly when Admiralty had brought its own suit on the same contract questions in the United States Court of Federal Claims. *See Admiralty Constr., Inc. by Nat'l Am. Ins. Co. its Sur.,* ASBCA No. 48627, 96–2 BCA ¶ 28,280, 1996 WL 173349 (A.S.B.C.A. Apr. 4, 1996). Because the Board properly dismissed National's purported claim, this court affirms.

## I.

On January 7, 1992, the Department of the Navy (Navy) awarded Contract No. N62477–91–C–3067 to Admiralty. Under the contract, Admiralty agreed to construct a building at the Patuxent Naval Air Station in Maryland for $117,105. The contract set a completion date for June 20, 1992, which the parties later extended to November 19, 1992. As required in the contract, Admiralty furnished both a performance bond for $117,105 and a payment bond for $58,552.50. Admiralty acquired both bonds from National.

To acquire the bonds, Admiralty executed a General Agreement of Indemnity with Na-

---

* Senior Circuit Judge Glenn L. Archer, Jr. vacated the position of Chief Judge and took senior status on December 24, 1997.

tional. This agreement between Admiralty and National permitted National to "exercise all rights of said Indemnitor [Admiralty], and should it [National] make any payment, [it] shall have every right and remedy of the Indemnitor for the recovery of the same." The indemnity agreement also nominated National as Admiralty's "attorney-in-fact." The Navy was not a party to this agreement.

On June 11, 1993, the Navy terminated Admiralty's contract for default. On September 8, 1993, National informed the Navy that it waived its right to take over and finish the defaulted contract. Instead, National purported to offer a replacement contractor. According to its letter, National "propose[d] that the [Navy] enter into a new contract with Bryant [Corporation] to undertake completion of the remaining work.... The surety providing the new bonds will be the primary surety for [t]he Bryant Corporation's work." Following this proposal, National did nothing else under its performance bond to assume or accept responsibility for the completion of the contract.

On October 25, 1993, the Navy awarded Bryant Corporation a new contract to complete the unfinished work from Admiralty's contract. Meanwhile, National received numerous claims to the payment bond funds from Admiralty's unpaid workers and suppliers. National therefore filed a third party complaint for interpleader in the United States District Court for the District of Maryland. *See. National Am. Ins. Co. v. Admiral Constr., Inc.,* No. WMN-93-2250 (D.Md. Jan. 11, 1996). After securing a judgment against Admiralty in the amount of the payment bond, *see id.,* National paid out the full amount of the payment bond to Admiralty's creditors. Moreover, National secured a judgment for any future performance bond payments. *See id.*

On January 10, 1995, the Navy's contracting officer issued a final decision to Admiralty. That decision assessed Admiralty $69,785 for completion of the contract and liquidated damages. On April 14, 1995, the Board received an appeal from "Admiralty Construction, Inc., by Surety." About a month later, the same entity amended its complaint. In both of these complaints to the Board, National purported to pursue the appeal as the representative of Admiralty.

On June 27, 1995, Admiralty filed suit alone in the United States Court of Federal Claims, challenging, among other things, the contracting officer's assessment of $69,785 in excess costs and damages. On January 24, 1996, the Navy counterclaimed against Admiralty in the Court of Federal Claims for $69,785 in excess procurement costs and liquidated damages. Apparently, the suit has been stayed, pending the outcome of this appeal. *See Admiralty Constr., Inc. v. United States,* No. 95–428C (Fed. Cl. June 19, 1997).

Meanwhile, the Board had issued *sua sponte* a show cause order questioning whether Admiralty's surety had "standing to pursue Admiralty's appeal of the Government's claim." Without a showing that National truly represented Admiralty, the Board suggested that it would lack jurisdiction under the Contract Disputes Act to adjudicate this claim because National was not in privity with the Navy.

In response, National argued that its payments under the payment bond sufficed to subrogate it to the rights of Admiralty. After consideration of this argument, the Board unanimously dismissed:

> In short, appellant has not cited, and we have not found, any decision in which a surety, by virtue of payment under a payment bond, was held to be subrogated to a position through which it could appeal from a final decision asserting a Government claim such as the one at issue here. Similarly, we are aware of no decision bestowing such a right as the result of merely tendering a completion contractor. Accordingly, we decline to take jurisdiction here.

*Admiralty Constr., Inc.,* ASBCA No. 48627, 96–2 BCA ¶ 28,280 at 141, 192–93 (citation omitted). National, still purporting to represent Admiralty, appealed to this court under the heading "Admiralty Construction, Inc., by National American Insurance Co."

## II.

Because this appeal arises under the Contract Disputes Act (CDA or Act), that statute supplies the standard of review:

[T]he decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

41 U.S.C. § 609(b) (1994). Because the Board dismissed this claim for lack of subject matter jurisdiction, this appeal invokes the first clause in section 609(b). Accordingly, this court reviews the Board's decision as a question of law. *See Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1574–75 (Fed.Cir.1995) (en banc); *Transamerica Ins. Co. v. United States*, 989 F.2d 1188, 1191 (Fed.Cir.1993).

## III.

■ Before the Board, National maintained that it was appealing on behalf of Admiralty, the contractor in privity with the Government. Indeed, this case is still captioned "Admiralty Construction, Inc., by National American Insurance Company." Thus, the central issue in this case is whether the CDA permits National to bring this claim on behalf of Admiralty.

To streamline the adjudicative resolution of contract claims, the CDA placed strict limits on the process. *See* S.Rep. No. 95–1118, at 1–2 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5235, 5235–36; *Sharman Co., Inc. v. United States*, 2 F.3d 1564, 1568–69 n. 6 (Fed.Cir.1993), *overruled on other grounds by Reflectone*, 60 F.3d 1572 (Fed Cir.1995). Within this framework, this court has enforced the strict limits of the CDA as "jurisdictional prerequisite[s] to any appeal." *Sharman*, 2 F.3d at 1569 n. 6 (citations omitted).

At the outset, this court examines whether National, regardless of whether it represents Admiralty, can appeal the contracting officer's final decision. Several strict requirements of the CDA claim adjudication process have direct relevance to that question. First, the Act emphasizes that only a "contractor" may appeal the decision of a contracting officer. For example, section 609 states that "a contractor may bring an action directly on the claim." 41 U.S.C. § 609(a)(1) (1994). Section 605 similarly acknowledges only two kinds of claims under the Act—those brought "by a contractor against the government" and those brought "by the government against a contractor." 41 U.S.C. § 605(a) (1994). To make this limitation clear, the Act defines the term "contractor" as "a party to a Government contract other than the Government." 41 U.S.C. § 601(4) (1994).

Addressing the reason for limiting the appeal right to a single "contractor," the Senate Report on the CDA explained that a "single point of contact"—the prime contractor—would prevent multiple, duplicative claims and appeals by subcontractors. S.Rep. No. 95–1118, at 16, *reprinted in* 1978 U.S.C.C.A.N. at 5250. Thus, the CDA makes only a single "contractor" eligible to appeal a contracting officer's final decision.

Another requirement of the CDA also affects National's eligibility to appeal to the Board. The CDA limits the eligibility to appeal to the boards of contract appeals to contractors with claims on contracts entered by a Government agency:

Each agency board shall have jurisdiction to decide any appeal from a decision of a contracting officer (1) *relative to a contract made by its agency* .... In exercising this jurisdiction, the agency board is authorized to grant any relief that would be available to a litigant asserting *a contract claim* in the United States [Court of Federal Claims].

41 U.S.C. § 607(d) (1994) (emphasis added). Under the heading "Executive agency contracts," the CDA also requires appeals to relate to contracts "entered into by an executive agency." 41 U.S.C. § 602(a) (1994).

National had a contract with Admiralty, but not with the Navy, an agency of the Government. The Navy was not a party to the surety agreement between Admiralty and National. The "single point of contact" for the claims arising from the contracting officer's final decision in this case was the

contractor, Admiralty. The Navy's relationship to the contract between Admiralty and National was as a third party beneficiary, not as a party. Accordingly, National was not a "contractor" as required by the CDA to file a claim. Also, National did not execute a takeover agreement with the Navy to complete the defaulted contract. *See, e.g., Carchia v. United States,* 202 Ct.Cl. 723, 485 F.2d 622, 628–29 (1973). Therefore it cannot show that it "entered into" a contract with "an executive agency." These disabilities prevent National alone from appealing the contracting officer's final decision in this case.

Indeed the United States Court of Appeals for the Second Circuit considered this same issue—whether a surety qualifies to appeal under the CDA. Our sister circuit concluded: "Congress simply had an entirely different set of problems in mind when it passed the CDA, and we see no reason to judicially transform sureties into 'contractors' where [C]ongress has not done so." *United States v. Seaboard Sur. Co.,* 817 F.2d 956, 962 (2d Cir.1987).

Finally, this case illustrates the wisdom of the eligibility limits in the CDA. As noted, the Act sought to prevent duplication in the adjudicative process by supplying a "single point of contact" for contract claims. Besides its inability to show its eligibility to bring an appeal alone under the CDA, National's fundamental problem is that Admiralty has already brought its own suit on the same claim in the Court of Federal Claims. National has difficulty justifying its claim before the Board when Congress purported to design the CDA to prevent duplicative claims before the boards and the courts. In fact, this court's predecessor expressly forbade simultaneous identical claims. *See Tuttle/White Constructors, Inc. v. United States,* 228 Ct.Cl. 354, 656 F.2d 644 (1981).

Perhaps recognizing its disabilities under the CDA, National argues that this court's decision in *Balboa Ins. Co. v. United States,* 775 F.2d 1158 (Fed.Cir.1985), gave sureties some rights under Government contracts. In context, however, *Balboa* does not give sureties jurisdiction under the CDA. In fact, *Balboa* had nothing to do with the CDA and therefore made no attempt to make sureties

eligible to appeal under the Act. Rather—and very significantly—the *Balboa* case arose in the United States Claims Court, now the Court of Federal Claims. Our case law has long established that a surety can sue the Government in the Court of Federal Claims under the non-contractual doctrine of equitable subrogation. *See, e.g., Great Am. Ins. Co. v. United States,* 202 Ct.Cl. 532, 481 F.2d 1298, 1308 (1973). In the context of a surety assuming the place of the contractor under the equitable subrogation doctrine, some language in *Balboa* alluded to contract-like relationships between the Government and its contractor's surety. *See Balboa,* 775 F.2d at 1160 ("[A] surety, as bondholder, is as much a party to the Government contract as the contractor. If the *surety* fails to perform, the Government can sue it on the bonds."). This dicta—proper in the context of an equitable subrogation case—does not extend to a surety's qualification as a "contractor" under the CDA. *Balboa* did not consider or establish that a surety who does not take over the contract stands in privity with the Government. Moreover, *Balboa* did not even consider jurisdiction for the Board.

This opinion is not the first time this court has explained the context and restrictions on the dicta in *Balboa.* In *Ransom v. United States,* 900 F.2d 242 (Fed.Cir.1990), this court explained:

> *Balboa* did not hold a surety has contractual rights against the government.... [Rather] this court merely held that the government becomes a "stakeholder" for remaining contract proceeds when a payment and performance bond surety notifies the government that the surety's interest is in jeopardy because of default by the contractor.

*Id.* at 245. In other words, this court clarified that the *Balboa* dicta addresses the surety's "stakeholder" status under equitable subrogation principles, not its contractor status under the CDA.

This court in *Ransom* explained well the reasons that National cannot alone appeal to the Board. In that case, the surety, Ransom, argued that the government's requirement of bonds somehow "necessarily impl[ies] a contract between the government and Ransom."

*Id.* at 244. This court responded: "That the government requires *contractors* to provide such bonds at most evidences an implied contract between the government and the contractors.... [T]he requirement [for bonds] placed on [the contractor] cannot be construed as an 'objective manifestation' that the government intended to undertake obligations to Ransom." *Id.* at 244–45. Similarly, because it is not a contractor with the Navy, National cannot alone appeal to the Board.

### IV.

■ Next, this court examines whether National can represent Admiralty in an appeal to the Board. National argues that it may supplant the contractor, Admiralty, by the doctrine of equitable subrogation. In some limited circumstances, the doctrine of subrogation "entitl[es] sureties to succeed to the contractual rights of the contractor against the government." *Ransom,* 900 F.2d at 245. In *Balboa,* 775 F.2d at 1158, this court stated:

> When a contractor defaults under the contract, the obligation of the surety then arises under its performance and payment bonds. *When the surety then finances the contract to completion,* it is subrogated to the contractor's property rights in the *contract balance.*

*Id.* at 1161 (first emphasis added). That is, to maintain a claim for equitable subrogation, a surety must either take over contract performance or finance the completion of the defaulted contract under its performance bond. *See Aetna Cas. & Sur. Co. v. United States,* 845 F.2d 971, 975 (Fed.Cir.1988).

National, however, did nothing under its performance bond to complete the defaulted contract or to finance the contract to completion. Instead the extent of National's involvement with completion of the contract was the suggestion that the Navy might enter a new contract with the Bryant Corporation. National simply did not perform under its performance bond to acquire subrogation rights. As the Board correctly stated:

> [W]e need not address [National's] argument that it may bring this appeal because it is subrogated to the rights of the Gov-

ernment. A surety is subrogated to the rights of the Government only upon payment or takeover under a performance bond. As [National] has done neither, its argument is without merit.

*Admiralty Constr., Inc.,* ASBCA No. 48627, 96–2 BCA ¶ 28,280 at 141,192 (citation omitted). In sum, because it did not finance the contract to completion nor take over completion itself, National cannot invoke the doctrine of equitable subrogation to maintain its claim in place of Admiralty.

### V.

■ Finally, National requests the Board and this court to enforce the terms of its indemnification agreement with Admiralty and allow it to serve as Admiralty's attorney-in-fact. At the outset, Admiralty's suit in the Court of Federal Claims calls into question National's authority to act on Admiralty's behalf. *See Restatement (Second) of Agency* § 119 cmt. b (1958) (stating that an agent's authority to act for a principal ends when the principal acts inconsistently with the agent's continued authority). At a minimum, Admiralty's representation of itself calls into question the parties' understanding of the scope of their indemnification agreement. This court, however, cannot reach that question. The CDA gives neither this court nor the Board power to enforce or construe National's contract with Admiralty. To state the obvious, no contracting officer has made a final decision on that contract to bring it within the purview of the CDA. Therefore, neither this court nor the Board may presume to construe and enforce the contract between Admiralty and its surety.

### VI.

Because National is neither a contractor nor an entity in privity with the Navy, National alone is not eligible to appeal to the Board under the CDA. Because it has not assumed the actual or financial responsibility for completion of the contract, National cannot invoke the doctrine of equitable subrogation to assume Admiralty's place as the con-

tractor with the Navy. Finally, because the Board and this court lack jurisdiction to adjudicate the indemnification agreement, National cannot assert that agreement as authority for acting in Admiralty's stead. Therefore, because National cannot appeal on its own, nor assume Admiralty's place as the contractor with the Navy, the Board correctly dismissed this appeal. This court affirms.

COSTS

Each party shall bear its own costs.

*AFFIRMED.*