**FIREMAN'S FUND INSURANCE COMPANY, Appellant,**

v.

**Gordon R. ENGLAND, Secretary of the Navy, Appellee.**

No. 00–1420.

United States Court of Appeals, Federal Circuit.

DECIDED: Nov. 27, 2002.

---

8. Given this holding, it is unnecessary to address any of appellants' various other arguments.

Vincent J. Zichello, Zichello & McIntyre, LLP, of New York, NY, for appellant.

Elizabeth G. Candler, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, for appellee. With her on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and Donald E. Kinner, Assistant Director.

Before CLEVENGER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and BRYSON, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

After a contractor defaulted on a government construction contract, the surety entered into a takeover agreement and completed the work. The government assessed liquidated damages against the surety for delays in doing its work. The contracting officer rejected the surety's challenges to the liquidated damages, and the surety appealed that action to the Board of Contract Appeals ("Board"). The Board dismissed the portion of the claims relating to delays before the takeover agreement, and in this appeal the surety challenges that ruling. We (1) hold that the Board's action was a final decision that we have jurisdiction to review, and (2) affirm the Board's dismissal of the pre-takeover claims.

I

The United States Navy and Summit General Contracting Corp. ("Summit") entered into a contract in 1988 for Summit to construct a government building. Fireman's Fund Insurance Company ("Fireman's Fund") was the surety and provided performance and payment bonds. Summit and Fireman's Fund executed a "General Indemnity Agreement" under which, in case of a breach of the construction contract, Summit assigned to Fireman's Fund "all of their rights under the contracts ... including their right, title and interest in and to ... all actions, causes of actions, claims and demands whatsoever which the Principal may have in anyway arising out of or relating to such Bond, or contract covered by such Bond."

The government terminated the contract for default on January 16, 1990, after Summit failed to complete the contract by the scheduled date. The government and Fireman's Fund entered into a takeover agreement on April 17, 1990, under which Fireman's Fund agreed to complete the contract. Summit was not a party to that contract, which did not mention the Gener-

al Indemnity Agreement or its assignment of claims to Fireman's Fund.

Fireman's Fund submitted a claim to the contracting officer seeking an "equitable adjustment and/or rescission of assessed liquidated damages." Its claims all related to delays in performance that the government allegedly caused, both before and after the takeover agreement. The contracting officer denied all the claims, and Fireman's Fund appealed to the Board.

On the government's motion, the Board dismissed the claims that arose before the takeover agreement. The Board held that Fireman's Fund was not a "contractor" under the Contract Disputes Act who could invoke that Act to assert those claims, and that the Board thus lacked jurisdiction over those claims. The Board also ruled that Summit's assignment of its claims to Fireman's Fund under the General Indemnity Agreement was barred by the Anti–Assignment Act. Finally, the Board rejected Fireman's Fund's claim of equitable subrogation, determining the doctrine was inapplicable.

After the Board denied Fireman's Fund's motion for reconsideration on May 2, 2000, Fireman's Fund appealed to this court. Thereafter, on March 5, 2001, the Board dismissed the remaining appeal (which involved delays after the takeover agreement) without prejudice, but provided that the dismissal would be with prejudice, unless within three years either party sought to reinstate the appeal or the court itself did so.

## II

■ In reviewing decisions of trial tribunals, federal appellate courts treat as "final decisions" reviewable under 28 U.S.C. § 1291 only those decisions that fully dispose of all the claims in the case. *Teller Envtl. Sys., Inc. v. United States,* 802 F.2d 1385, 1388 (Fed.Cir.1986). A tri-

al court decision that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" is not final unless the trial court certifies it as such. FED.R.CIV.P. 54(b). As the standard frequently is stated: "[f]inality classically has required that the appealed order end the litigation on the merits and leave nothing for the court to do but execute judgment." *Kinetic Builder's Inc. v. Peters,* 226 F.3d 1307, 1312 (Fed.Cir.2000) (citations omitted). Under this standard, the Board's decision on appeal in this case would not be final because it did not dispose of all the claims pending before the tribunal.

■ "Although this classical finality requirement is strictly imposed on district court decisions, it is not imposed with exact congruence on Board decisions." *Id.* at 1313 (citations omitted). In determining the "finality" of Board decisions that completely dispose of less than all the claims, we have focused not on whether the decision disposed of the entire "case," but on its impact on the particular claims and their relationship to the Board's administrative proceeding. "[F]inality of a Board decision can be found 'where the process of the Board decisionmaking has reached a stage where judicial review will not disrupt the orderly process of adjudication and where rights or obligations have been determined or legal consequences will flow from the agency action.'" *Id.* (quoting *Dewey Elecs. Corp. v. United States,* 803 F.2d 650, 654 (Fed.Cir.1986)).

Consistent with this analysis, we have held that a Board decision adjudicating the merits of nine claims but remanding five of them (upon which the contractor prevailed) to the contracting officer to determine damages was final with respect to the four claims that the Board decided against the contractor. *Dewey Elecs.,* 803 F.2d at 653.

We "h[e]ld that the Board made a final decision on the four claims that are the subject of this appeal and that appeal should not be deferred pending resolution of quantum for the five claims remanded." *Id.* This court refused to make "the finality concept of district court litigation, requiring both liability and damages to be resolved before an appeal ... applicable to agency board proceedings." *Id.* at 654. It stated that:

the Board here, in disposing of all of the entitlement questions, fully addressed all of the decisions (constructively made) of the contracting officer then on appeal to the Board. In the words of the Supreme Court, "there was no possible disruption of the administrative process; there was nothing else for the [Board] to do."

*Id.* at 658 (quoting *Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 71, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970)).

Our decisions have treated as final (and hence appealable) Board decisions in various situations that have decided less than all the issues before the Board. *See, e.g., Kinetic Builder's,* 226 F.3d 1307.

■ Under these principles, the Board's decision dismissing those portions of the claims that arose prior to the takeover agreement is a "final decision" under 28 U.S.C. § 1295(a)(10) for purposes of appeal. Since the Board dismissed those claims without reaching their merits, all we need decide in this appeal is whether the Board had jurisdiction to consider them. That is a narrow issue and not difficult to resolve. There is no reason to believe that judicial review of that issue at this stage of the proceedings will "disrupt the orderly process of adjudication and where rights or obligations have been determined or legal consequences will flow from the agency action." *Kinetic Build-*

*er's,* 226 F.3d at 1313 (internal citations omitted).

Our conclusion that the Board's decision is final for purposes of appeal also is supported by the Board's subsequent dismissal of the balance of the case. There are now no claims in this case pending before the Board. Although the Board's subsequent dismissal was without prejudice to refiling those dismissed claims within three years, there is no indication at present whether or not Fireman's Fund will do so. The likelihood of such filing is conjectural. Such speculation would be an inappropriate basis for determining our jurisdiction.

In cases on appeal from a district court to a court of appeals under the analogous provision of 28 U.S.C. § 1291 (2000), which limits appeals to "final" decisions of district courts, our sister circuits have treated as final orders disposing of only part of a case, where the district court subsequently dismissed the rest of it. *See, e.g., Anderson v. Allstate Ins. Co.,* 630 F.2d 677 (9th Cir.1980); *Jetco Elec. Indus., Inc. v. Gardiner,* 473 F.2d 1228 (5th Cir.1973). In *Anderson* the court entertained an appeal from a district court order dismissing the action as to only some of the defendants, where the district court subsequently disposed of the remainder of the case. It quoted with approval the following statement from *Jetco,* where the district court had followed a similar course:

[T]hese two orders, considered together, terminated this litigation just as effectively as would have been the case had the district judge gone through the motions of entering a single order formally reciting the substance of the earlier two orders. Mindful of the Supreme Court's command that practical, not technical, considerations are to govern the application of principles of finality, we decline

appellee's invitation to exalt form over substance by dismissing this appeal.

630 F.2d at 681 (quoting *Jetco*, 473 F.2d at 1231) (internal citations omitted).

The Ninth Circuit in *Anderson* "f[ou]nd this analysis persuasive." *Id.* So do we.

### III

■ In dismissing the pre-takeover agreement claims, the Board held (1) that the Contract Disputes Act, 41 U.S.C. §§ 601–613, did not cover these claims because Fireman's Fund was not a "contractor" under that Act and (2) that under the Anti–Assignment Act, the General Indemnity Agreement was invalid insofar as it purported to assign Summit's claims against the government to Fireman's Fund in case of default.

What is commonly called the Anti–Assignment Act consists of two statutory provisions. Title 41 of the United States Code, Section 15(a) (2000) (which deals with "Public Contracts") provides that "[n]o contract ... or any interest therein, shall be transferred by the party to whom such contract ... is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States is concerned." Subsection (b) of that provision states that "[t]he provisions of subsection (a) ... shall not apply in any case in which the moneys due or to become due from the United States or from any agency or department thereof ... are assigned to a bank, trust company, or other financing institution, including any Federal lending agency."

Title 31 of the United States Code, Section 3727(a)(1), (b) (2000) (which deals with "Money and Finance") provides that an "assignment of any part of a claim against the United States Government or of an interest in the claim ... may be made

only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued." Subsection (c) makes subsection (b) inapplicable "to an assignment to a financing institution of money due or to become due under a contract" provided certain conditions (not here involved) are met.

These two provisions together broadly prohibit (with narrow exceptions discussed below) transfers of contracts involving the United States or interests therein, and assignment of claims against the United States. Such contracts (or interest therein) may not be transferred and such claims may be assigned "only after" they have been allowed in a specific amount and provisions made for their payment.

Under the General Indemnity Agreement, in case of breach of the construction contract between Summit and the United States, Summit assigned to Fireman's Fund "all of their rights under the contracts" and "all ... their right, title, and interest in and to ... all ... claims ... which the Principal may have in any way arising out of or relating to" the bonds Fireman's Fund provided. The assignment by Summit of "all of their rights under the contracts" violated the prohibition in 41 U.S.C. § 15(a) against the transfer of "any interest" in any contract involving the United States. At the time the assignment of the claims was made, no claims had been allowed. Indeed, any claims against the United States arising from a default in the construction contract had not even arisen. Under Section 3727(a)(1)(b), the assignment of those claims in the General Indemnity Agreement was invalid.

Perhaps Fireman's Fund seeks to sustain the assignment by invoking the exemptions from these prohibitions in 41 U.S.C. § 15(b) covering "a bank, trust company, or other financing institution,"

and in 31 U.S.C. § 3127(c) for "an assignment to a financing institution of money due or to become due under a contract." The argument would be that those exemptions reflect a Congressional intent to exempt security transactions from the prohibitions of the Anti–Assignment Act; and that because the contract and claim assignments in the General Indemnity Agreement were for security purposes, they should be viewed as coming within the exception.

Although neither provision of the Anti–Assignment Act defines the term "financing institution," it is not ambiguous. A "financing institution" supplies financing. That is its business. It lends money or provides capital. As the provision in 41 U.S.C. § 15(b) indicates, the term includes banks and trust companies, as well as "other" institutions whose business is providing financing.

Fireman's Fund is not a "financing institution." It is an insurance company writing insurance policies that protect against risks, including the furnishing to the United States government of the performance and payment bonds that the Miller Act requires for public building or public works contracts. *See* 40 U.S.C. § 270a (2000).

■ We decline to give the term "financing institution" in the exceptions such an expansive reading. The exceptions in the Anti–Assignment Act are framed in terms of the institutions to which transfers and assignments are permitted, not the purpose for which the transfers and assignments are made. " 'Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied in the absence of evidence of a contrary legislative intent.' " *Espenschied v. Merit Sys. Prot. Bd.*, 804 F.2d 1233, 1237 (Fed.Cir.1986) (quoting *Andrus v. Glover Constr. Co.*, 446 U.S.

608, 616–17, 100 S.Ct. 1905, 64 L.Ed.2d 548 (1980)). Indeed, our predecessor court, whose decisions bind us, held an assignment of a government contract to a surety invalid under the Anti–Assignment Act because the surety was not a "bank, trust company, or other financing institution." *Royal Indemnity Co. v. United States*, 117 Ct.Cl. 736, 93 F.Supp. 891, 894 (1950).

If the statutory exemptions are to be broadened, it is for Congress, not this court, to do so.

## IV

■ Fireman's Fund apparently seeks to avoid the bar of the Anti–Assignment Act by invoking the doctrine of equitable subrogation. Its argument appears to be that under the precedents of this court, as a surety that has taken over performance of a government contract, it may assert such a claim against the United States under the contract, and that in that capacity it is a "contractor" under the Contract Disputes Act. Neither contention is correct.

A brief description of the pertinent provisions of the Contract Disputes Act ("Disputes Act" or "CDA") is necessary to understanding these issues. That Act covers "[a]ll claims by a contractor against the government relating to a contract." 41 U.S.C. § 605(a) (2000). The Act defines "contractor" as "a party to a Government contract other than the Government." *Id.* § 601(4). It permits "the contractor" to appeal a contracting officer's decision to a board of contract appeals. *Id.* § 606. "[T]his court has enforced the strict limits of the CDA as 'jurisdictional prerequisite[s] to any appeal.' " *Admiralty Constr., Inc. v. Dalton, Sec'y of the Navy*, 156 F.3d 1217, 1220 (Fed.Cir.1998) (quoting *Sharman Co., Inc. v. United States*, 2 F.3d 1564, 1569 n. 6 (Fed.Cir.1993) (inter-

nal citations omitted)). The Board ruled that because the government was not a party to the General Indemnity Agreement between Summit and Fireman's Fund the latter could not be a contractor under the Disputes Act and that the Board therefore had no jurisdiction over Fireman's Fund's claims for the pre-takeover agreement period.

■ The doctrine of equitable subrogation entitles a surety that "takes over contract performance" or "finances completion of the defaulted contract" to "succeed to the contractual rights of a contractor against the government." *Ins. Co. of the West v. United States*, 243 F.3d 1367, 1370 (Fed.Cir.2001). Fireman's Fund relies on opinions of this court that permitted such sureties to sue the United States under government contracts to which they were not a party. *See Balboa Ins. Co. v. United States*, 775 F.2d 1158, 1160 (Fed.Cir.1985); *Transamerica v. United States*, 989 F.2d 1188 (Fed.Cir.1993).

■ Fireman's Fund's reliance on those cases is misplaced. They were suits for damages against the United States brought in what is now the Court of Federal Claims; and "[o]ur case law has long established that a surety can sue the Government in the Court of Federal Claims under the non-contractual doctrine of equitable subrogation." *Admiralty Constr.*, 156 F.3d at 1221.

We have also recognized, however, that there is a clear distinction between a surety's right to sue the United States under the doctrine of equitable subrogation and its attempt to assert a claim before a Board of Contract Appeals under the Disputes Act. As we have explained: "[i]n the context of a surety assuming the place of the contractor under the equitable subrogation doctrine, some language in *Balboa* [775 F.2d at 1160] alluded to contract-like relationships between the Government and its contractor's surety.... This dicta-proper in the context of an equitable subrogation case-does not extend to a surety's qualification as a 'contractor' under the CDA.... *Balboa* did not even consider jurisdiction for the Board." *Admiralty Constr.*, 156 F.3d at 1221 (internal quotation omitted). *See also Ransom v. United States*, 900 F.2d 242, 244–45 (Fed.Cir. 1990).

For the Board to have jurisdiction under the Disputes Act, the claim must be brought by "a contractor," which is defined as "a party to a government contract," and be one "relating to a contract." 41 U.S.C. §§ 601(4), 605(a), 606. Fireman's Fund does not come within these standards. It was not a party to any contract with the government prior to the takeover agreement it had with the government, and its pre-takeover claims did not arise under such a contract.

Even if Fireman's Fund were equitably subrogated to any claim that Summit may have had against the government, that did not make Fireman's Fund a party to the contract between Summit and the United States for purposes of the Disputes Act. As the Second Circuit stated in *Seaboard Surety*, when "consider[ing] this same issue-whether a surety qualifies to appeal under the CDA ... 'Congress simply had an entirely different set of problems in mind when it passed the CDA, and we see no reason to judicially transform sureties into "contractors" where [C]ongress has not done so.'" *Admiralty Constr.*, 156 F.3d at 1221 (quoting *United States v. Seaboard Sur. Co.*, 817 F.2d 956, 962 (2d Cir.1987)).

In *Admiralty Construction*, in holding that a surety could not invoke the jurisdiction of a Board of Contract Appeals under the doctrine of equitable subrogation because it was not a "contractor" under the

Disputes Act, the court stated that the surety there "did not execute a takeover agreement with the Navy to complete the defaulted contract" and that "*Balboa* did not consider or establish that a surety who does not take over the contract stands in privity with the Government." 156 F.3d at 1221. This language does not aid Fireman's Fund.

Although Fireman's Fund did enter into a takeover agreement, its claims involved in this appeal all relate to its pre-takeover agreement activities. We do not read the quoted statements in *Admiralty Construction* as indicating, or even suggesting, that if the surety there had entered into a takeover agreement, it could have maintained an equitable subrogation claim under the Disputes Act based on activities before it entered into such agreement. The statements in *Admiralty Construction* merely point out that since the surety had not had a takeover agreement, it could not rely on such agreement to establish that it was a party to a contract with the United States. The court did not hold that if the surety had a takeover agreement, it thereby became a contractor with respect to claims that arose prior to its entering into the agreement.

In *United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949), the Supreme Court, in holding that a surety could maintain an action against the United States under the Torts Claims Act in its own name, stated that the Anti–Assignment Act (as then set forth in R.S. 3477) did not cover "assignments by operation of law" and that "subordination claims" were exempt from R.S. 3477. *Id.* at 374, 376, 380, 70 S.Ct. 207. It is unclear whether Fireman's Fund bases its claim upon Summit's assignment to it under the General Indemnity Agreement, upon equitable subrogation, or upon both. To the extent it relies upon equitable sub-

rogation and to the extent that doctrine works by operation of law (*cf. Ins. Co. of the West*, 243 F.3d 1367), the Anti–Assignment Act would not bar its claim. That, however, would not entitle Fireman's Fund to prevail, because it still does not satisfy the requirement of the Contracts Disputes Act that to proceed under that Act, a party must have been a "contractor" with the United States, which Fireman's Fund was not with respect to its pre-takeover claims.

## CONCLUSION

The decision of the Board dismissing the pre-takeover agreement claims is

*AFFIRMED.*