**UNITED PACIFIC INSURANCE COMPANY, Appellant,**

v.

**James G. ROCHE, Secretary of the Air Force, Appellee.**

No. 03–1622.

United States Court of Appeals, Federal Circuit.

DECIDED: Aug. 18, 2004.

Gary A. Wilson, Duane Morris LLP, of Philadelphia, PA, argued for appellant. With him on the brief was Salil P. Patel.

Michael N. O'Connell, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and James M. Kinsella, Deputy Director. Of counsel on the brief was Major Graeme Henderson, Chief, Surety Litigation Branch, Air Force Legal Services Agency, of Arlington, Virginia. Also of counsel was William M. Lackermann, Jr., Attorney, Air Force Materiel Command Law Office, Wright–Patterson Air Force Base, of Dayton, OH.

Edward G. Gallagher, Wickwire Gavin, P.C., of Vienna, VA, for amicus curiae The Surety Association of America.

Before LOURIE, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and CLEVENGER, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

A surety who completed performance of a defaulting government contractor seeks an equitable adjustment on various theories. The Armed Services Board of Contract Appeals ("Board") held that it had no jurisdiction over most of these claims under our recent decision in *Fireman's Fund Insurance Co. v. England*, 313 F.3d 1344 (Fed.Cir.2002) (*"Fireman's Fund"*), and rejected the remaining claims on the merits. *In re United Pac. Ins. Co.*, 03–2 B.C.A.(CCH) ¶ 32,267 at 159,604, 2003 WL 21350374 (A.S.B.C.A.2003). We affirm.

I

This case grows out of a 1995 Air Force contract with Castle Abatement Corporation ("Castle") for the renovation of three buildings. The appellant, United Pacific Insurance Company ("United"), was the surety for the project and "issued performance and payment bonds to Castle." *Id.* at 159,606. Castle and United also executed an indemnity agreement in which Castle assigned to United, in case of Castle's default, all of its "rights ... [and] claims ... arising from or out of" the construction contract, including "all moneys due" thereunder. The government was not a party to the surety or indemnity agreements, and except for its participation as a surety, United was not "part of the contracting process." *Id.* at 159,606.

Castle had performance and financial problems. *Id.* at 159,607. In May 1997, Castle asked the contracting officer to make all future progress payments to United. *Id.* at 159,616. After the contracting officer told United that a novation would be required to make that change, United refused to do that. *Id.* Thereafter, the Air Force made an additional payment of $116,000 to Castle. *Id.*

In July 1997, Castle abandoned performance, and the government terminated the contract for default. *Id.* at 159,609. The following month, United and the government entered into a takeover agreement under which United agreed to complete performance of the contract and the gov-

ernment agreed to pay United the remaining amounts due under the construction contract, which the takeover agreement incorporated. *Id.* at 159,611–13. At that time, the government estimated, and United agreed, that 79.91 percent of the contract work had been completed. *Id.* at 159,610. Contract performance was completed in 1998. *Id.* at 159,615.

United sought an equitable adjustment from the contracting officer on a number of grounds; it also requested the balance due under the construction contract. *Id.* at 159,615; 159,620. After the contracting officer denied the claims, United appealed to the Board, which held that under *Fireman's Fund*, it lacked jurisdiction to consider United's claims based on events that occurred before the takeover agreement, including its equitable subrogation claims. *Id.* at 159,614. The Board also held that it lacked jurisdiction over United's claim that the original construction contract was illegal. *Id.* at 159,622–23. The Board denied United's claim for the balance due under the contract because United had not given the release that the contract required. *Id.* at 159,627–28.

## II

A. Our recent decision in *Fireman's Fund* involved an almost identical situation. There, following a contractor's default on a government building construction contract, the surety (Fireman's Fund) and the government entered into a takeover agreement. 313 F.3d at 1346. The contractor (Summit) and the surety had entered into a "General Indemnity Agreement," to which the government was not a party, under which, in case of a breach of the construction contract, the contractor assigned to the surety all of its rights under that contract. *Id.*

The Armed Services Board of Contract Appeals dismissed the surety's claims that arose before the takeover agreement for lack of jurisdiction. *Id.* at 1347. It held that the surety was not a "contractor" under the Contract Disputes Act with respect to those claims, that the contractor's assignment of its claims to the surety in case of default was barred by the Anti–Assignment Act, and it rejected the surety's equitable subrogation claim because the surety was not a "contractor" under the Disputes Act. *Id.*

We affirmed. Noting that Fireman's Fund's "claims involved in th[e] appeal all relate[d] to its pre-takeover agreement activities," we held that the surety was not a "'contractor' with the United States ... with respect to its pre-takeover claims," *id.* at 1352, because "[i]t was not a party to any contract with the government prior to the takeover agreement it had with the government, and its pre-takeover claims did not arise under such a contract," *id.* at 1351. We ruled that "[e]ven if Fireman's Fund were equitably subrogated to any claim that Summit may have had against the government, that did not make Fireman's Fund a party to the contract between Summit and the United States for purposes of the Disputes Act." *Id.* We further held that the Anti–Assignment Act covered and invalidated the assignment of the contractor's rights under the construction contract, and that the exception to that Act "for 'an assignment to a financing institution of money due or to become due under a contract'" was inapplicable because the surety was not a "financing institution." *Id.* at 1350.

■ *Fireman's Fund* thus stands for the proposition that for the Board to have jurisdiction under the Contract Disputes Act over a claim by a surety that entered into a takeover agreement with the United States, the claim must "arise under" a contract the surety had with the government prior to that agreement. For a claim to "arise under" such a contract, the

operative facts upon which the claim is based must have occurred after the pre-takeover contract was executed.

In this case, the only contract between United and the government was the takeover agreement. Prior to that agreement, there was no contract between United and the government, and United's present claims cannot have arisen under such a contract. Stated differently, the Board had no jurisdiction over United's claims that were based upon events that occurred prior to the takeover agreement.

■ B. Except for one claim we discuss in Part III below, the remainder of United's claims suffer from the same infirmity that made the claims in *Fireman's Fund* not subject to the Board's jurisdiction: they relate to and depend upon events that occurred before the takeover agreement and with respect to which United was not a "contractor" under the Contract Disputes Act when the claims arose.

1. United seeks an equitable adjustment because the government "paid Castle approximately 80 percent of the contract price when only 34 percent of the work was complete." Appellant's Br. at 13. Its theory apparently is that if the government had not thus overpaid Castle, United would have known that it had more work to do than it had anticipated and would have received more under the takeover contract for the work it did. It also seeks recovery of the $116,000 payment the Air Force made to Castle before the takeover agreement, which United alleges the Air Force agreed to send to it.

All of these alleged overpayments to Castle, however, were made prior to the takeover agreement, at a time when United was not yet a "contractor" with the United States. The Board therefore correctly concluded that it lacked jurisdiction over the claims.

United relies on *National Surety Corp. v. United States*, 118 F.3d 1542, 1544 (Fed. Cir.1997), which involved a surety's suit in the Court of Federal Claims for "funds that were required to have been retained by the government from the progress payments to" the original contractor. We ruled that the surety could assert such a claim but that the "appropriate theory of liability" was the "doctrine of subrogation." *Id.* at 1545; *see also id.* at 1546 ("The subrogation right is equitable ... and is established when the surety bonds are given." (citation omitted)). We expressly rejected the surety's contention that such a claim could be based on a third-party beneficiary theory. *Id.* at 1544.

*National Surety* involved a suit in the Court of Federal Claims under the Tucker Act and did not involve the question in *Fireman's Fund* whether the Board had jurisdiction over such a claim that arose before the takeover agreement. *Fireman's Fund* indicated that the Board could not entertain such a claim. It stated: "To the extent [the surety] relie[d] upon equitable subrogation[,] ... it still d[id] not satisfy the requirement of the Contracts Disputes Act that to proceed under that Act, a party must have been a 'contractor' with the United States, which [the surety] was not with respect to its pre-takeover claims." 313 F.3d at 1352 (citation omitted).

■ United contends that it has a "contractual right" to assert its overpayment claim before the Board because the takeover agreement states that the "SURETY expressly reserves all prior rights including but not limited to the Government's overpayment to" Castle. *United Pac. Ins. Co.*, 03–2 B.C.A. (CCH) ¶ 32,267 at 159,613. Contrary to United's argument, however, this provision did not give the Board jurisdiction over the claim. The Board's jurisdiction is defined by the Contract Disputes Act. Parties cannot, by agreement, confer upon a tribunal jurisdiction that it otherwise would not have.

See *Fla. Power & Light Co. v. United States*, 307 F.3d 1364, 1370 (Fed.Cir.2002) ("Contractual language ... cannot confer jurisdiction" under the Contract Disputes Act.) Thus, a "reference to the [Contract Disputes Act] in the contract" could not vest the Board with "jurisdiction over the ... claim[ ] if it was not otherwise authorized" to adjudicate it. *Id.* at 1371. The provision of the takeover agreement upon which United relies reserves only its "prior" rights, *i.e.,* those that existed before the takeover agreement. Under *Fireman's Fund,* the Board had no jurisdiction over claims based upon those rights.

■ United also cites the following language of the takeover agreement as a basis for Board jurisdiction: the "SURETY shall be entitled to exercise such rights as are afforded by the ... Contract Disputes Act." *United Pac. Ins. Co.,* 03–2 B.C.A. (CCH) ¶ 32,267 at 159,613. That contractual provision merely recognized that United retained whatever rights it otherwise had under the Contract Disputes Act. As we have explained, United had no right under that Act to maintain before the Board a claim based on pre-takeover agreement events.

■ 2. United contends that the original construction contract was illegal because under governing statutes and regulations, the Air Force was required to obtain prior congressional authorization before entering into it, which the Air Force concededly did not do. Such prior authorization was required for certain construction contracts whose cost exceeded $300,000. The legality issue turns largely upon whether the contract involved three buildings or a single building.

United contends that because the contract was illegal, it is entitled to recover under a theory of *quantum meruit. See United States v. Amdahl Corp.,* 786 F.2d 387, 393 (Fed.Cir.1986). It also argues that there was an implied-in-fact contract (presumably between Castle and the government) under which it may recover.

United's illegality claims all involve events that occurred long before the takeover agreement and relate to a contract to which United was not a party. Assuming without deciding that a surety has standing to challenge the validity of a completed contract, on its face United's claim appears covered by *Fireman's Fund* and therefore beyond the Board's jurisdiction.

United argues, however, that Castle's assignment in the indemnity agreement of all claims arising under the construction contract in case of default included the claim of contract illegality it now asserts. *Fireman's Fund* held that the Anti–Assignment Act covered and invalidated such assignment of claims to a surety. 313 F.3d at 1349–50. United invokes an exception to that Act for situations where the "Government ... chooses to ... recognize an assignment." *Tuftco Corp. v. United States,* 222 Ct.Cl. 277, 614 F.2d 740, 745 (1980) (internal quotation marks omitted). It asserts that the government recognized the assignment when it entered into the takeover agreement with United. Without discussing the issue in detail, it suffices to say that we discern nothing in the takeover agreement that shows a government recognition of the assignment in the earlier indemnity agreement between Castle and United, to which the government was not a party.

### III

■ Finally, United asserts that it is entitled to the balance due on the construction contract (approximately $175,000) now that it has satisfied its obligations under the takeover agreement. The Board had jurisdiction over this claim because, although it stemmed from the construction contract, it arose after the takeover agreement.

Under Federal Acquisition Regulation 52.232–5(h), *see* 48 C.F.R. § 52.232–5(h) (1994), which the contract incorporated, the government's obligation to make final payment under the contract is conditioned on the contractor's "[p]resentation of release of all claims against the Government arising by virtue of th[e] contract, other than claims, in stated amounts, that the Contractor has specifically excepted from the operation of the release." As United admits in its brief, it has not provided such a release. Appellant's Br. at 43. Although United argues that it would be unable to pursue its other claims if it provided the release, that is beside the point. As the regulations and contract state, without the release United is not entitled to receive the balance due under the contract.

In these circumstances, the Board properly denied the claim. Like the Board, however, "[w]e offer no opinion as to whether [United] could recover after satisfying" the release requirement, since apparently issues remain regarding the amount of United's claim. *United Pac. Ins. Co.*, 03–2 B.C.A. (CCH) ¶ 32,267 at 159,620; 159,631 n. 14.

## CONCLUSION

The decision of the Armed Services Board of Contract Appeals is

*AFFIRMED.*