# United States Court of Appeals for the Federal Circuit

04-1334

UNITED PACIFIC INSURANCE COMPANY,

Appellant,

v.

James G. Roche, SECRETARY OF THE AIR FORCE,

Appellee.

Gary A. Wilson, Post & Schell, P.C., of Philadelphia, Pennsylvania, argued for appellant. With him on the brief was Salil P. Patel, Duane Morris LLP, of Philadelphia, Pennsylvania.

Hillary Stern, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellee. With her on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and James M. Kinsella, Deputy Director. Of counsel on the brief was William M. Lackermann, Jr., Chief, Office of Trial Attorney, Office of General Counsel, United States Department of the Air Force.

Appealed from: United States Armed Services Board of Contract Appeals

# United States Court of Appeals for the Federal Circuit

04-1334

UNITED PACIFIC INSURANCE COMPANY,

Appellant,

v.

James G. Roche, SECRETARY OF THE AIR FORCE,

Appellee.

_____

DECIDED:  March 18, 2005

_____

Before MAYER, <u>Circuit Judge</u>, FRIEDMAN, <u>Senior Circuit Judge</u>, and CLEVENGER, <u>Circuit Judge</u>.

MAYER, <u>Circuit Judge</u>.

United Pacific Insurance Company ("United") appeals the decisions of the Armed Services Board of Contract Appeals, ASBCA Nos. 52419, 54270, 54271 (Feb. 7, 2001 & Dec. 29, 2003) ("<u>United I</u>").  It asserts claims arising from events that occurred before it entered into a takeover agreement with the government, as well as two claims stemming from the takeover agreement.  Because the board lacks jurisdiction, we cannot consider the merits of United's pre-takeover claims.  As to the remaining two claims, we affirm.

Background

On September 28, 1995, the government executed Contract No. F28609-95-C-0037 with Castle Abatement Corp. ("Castle"). The contract was for all necessary work and material for repair of a Secondary Containment System at McGuire Air Force Base, New Jersey, for a fixed-price of $1,957,630. The contract also encompassed removal and disposal of contaminants at fixed unit prices, with a total not-to exceed price of $2,312,367. Castle obtained a payment and performance bond from United for $2,312,267, and a labor and material payment bond for $1,156,134, with the government as obligee. Prior to securing the bonds, Castle executed an indemnity agreement for the benefit of United and other insurance companies.

On July 22, 1997, the government terminated the rights of Castle to proceed under the contract for default. In an earlier appeal, we addressed Castle's default involving a related series of contracts with the Air Force. See United Pac. Ins. Co. v. Roche, 380 F.3d 1352, 1354-55 (Fed. Cir. 2004) ("United II"). Castle had no pending claims against the government at the time of default and it did not appeal the termination. Within a month, the government made demand upon United as surety, to fulfill its obligations under the performance bond.

United entered into a written takeover agreement with the government on August 5, 1997, in which it agreed to complete the work remaining under the contract. The takeover agreement was incorporated into the original contract and United was substituted as the contractor. Certain "Whereas" clauses within the takeover agreement detailed the background and purpose of the agreement. One such "Whereas" clause stated that a contract balance of $998,863.64 remained to be paid by the government

for the fixed price portion of the original contract. The stated contract balance was based upon the payments made to Castle as of the date of termination, and United drafted the takeover agreement incorporating the amount. The recited amount turned out to be incorrect. The takeover agreement understated the amount paid to Castle prior to the termination, and thus overstated the contract balance available to United to complete the Castle contract by $46,288.37.

In a letter dated October 23, 1998, United submitted a request for equitable adjustment to the government containing ten claims. On May 21, 1999, the parties met to discuss possible settlement. United's representative alleges, but the government disputes, that an oral settlement of certain claims on which the parties agreed was entered into for $214,745.

After settlement negotiations reached an impasse, the contracting officer denied all claims and United appealed to the Armed Services Board of Contract Appeals ("board"). It alleged four counts: (1) for an equitable adjustment based upon pre-takeover events; (2) for a cardinal change; (3) for a contract balance; and (4) for the specific enforcement of the settlement agreement. On December 29, 2003, the board concluded that it lacked jurisdiction over United's claims based upon contaminated soil and other site conditions that arose prior to the takeover agreement. Similarly, the board determined that the indemnification agreement between Castle and United could not serve as a vehicle to assign Castle's unliquidated claims to United.

The board did, however, address the merits of United's post-takeover claims. It denied the contract balance claim, although adjustment was made for a minor mathematical error. It determined that the amount of the contract balance in the

"Whereas" clause was not controlling because the clause was a mere recital of an undisputedly erroneous fact; and it rejected United's assertion that a settlement had been reached at the May 21, 1999 meeting. United timely appealed the board's decision and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(10).

Discussion

Like the board, we are precluded from reviewing the merits of United's pre-takeover claims. The board determined that United lacked standing and, therefore, that it lacked jurisdiction to entertain United's pre-takeover claims because United was not a "contractor" as defined by the Contract Disputes Act, 41 U.S.C. §§ 601-613, at the time those claims arose. Our subsequent decision in United II addressing an identical takeover agreement between the same parties leaves no dispute that United's pre-takeover claims are not subject to the board's jurisdiction. See United II, 380 F.3d at 1354-57. As we reasoned in United II, "the remainder of United's claims suffer from the same infirmity that made the claims in Fireman's Fund [Insurance Co. v. England, 313 F.3d 1344 (Fed. Cir. 2002)] not subject to the Board's jurisdiction: they relate to and depend upon events that occurred before the takeover agreement and with respect to which United was not a 'contractor' under the Contract Disputes Act when the claims arose." Id. at 1356. Therefore, we turn to the post-takeover claims.*

---

* Realizing that United II would result in an affirmance of the board's decision dismissing the pre-takeover claims for lack of jurisdiction, United moved to transfer the pre-takeover claims to the United States Court of Federal Claims, and asked us to decide the contract balance claim. We denied United's motion to bifurcate the appeal and transfer some of the claims. To the extent United renews its motion to transfer under 28 U.S.C. § 1631, we decline because we have jurisdiction over this appeal and because "[c]ourts have exercised their section 1631 transfer powers but not usually, or preferably, in the form of bifurcation of claims." Galloway Farms, Inc. v. United States, 834 F.2d 998, 1001 (Fed. Cir. 1987).

04-1334                                    4

Our review of a board decision is based upon the standards set out in the Contract Disputes Act of 1978, 41 U.S.C. §§ 601-613. E.L. Hamm & Assocs., Inc. v. England, 379 F.3d 1334, 1338 (Fed. Cir. 2004). We review questions of law de novo. Eastman Kodak Co. v. Rumsfeld, 317 F.3d 1377, 1379 (Fed. Cir. 2003). "Contract interpretation is a question of law; therefore, the board's decisions regarding this matter are not binding." M.A. Mortenson Co. v. Brownlee, 363 F.3d 1203, 1205 (Fed. Cir. 2004). "Because 'the board has considerable experience and expertise in interpreting government contracts,' however, 'its interpretation is given careful consideration and great respect.'" Id. (quoting Cmty. Heating & Plumbing Co. v. Kelso, 987 F.2d 1575, 1579 (Fed. Cir. 1993)).

United's contract balance claim is based on its contention that the government is obligated to pay the balance referenced in the takeover agreement's "Whereas" clause. This clause is the only part of the takeover agreement that sets out a specific dollar amount for the balance. Examining the "Whereas" clause in light of the surrounding provisions in the takeover agreement, we agree with the board that the clause is a recital of fact. As such, "a recital of fact in an integrated agreement may be shown to be untrue." Restatement (Second) of Contracts § 218 (1981). Here, the operative terms of the takeover agreement entitled United to "all sums now due and payable and to become due and payable" under the contract. As drafter of the document, United incorporated the incorrect balance when it had the opportunity to correct the government's calculation error. United does not contest that the contract balance in the "Whereas" clause was inaccurate, so "the true facts have the same operation as if stated in the writing," unless estoppel is proven. Restatement, § 218 cmt b.

Although the application of equitable estoppel against the government is not entirely foreclosed, the Supreme Court has qualified that "the Government may not be estopped on the same terms as any other litigant." Heckler v. Cmty. Health Servs., 467 U.S. 51, 60 (1984). Our own precedent dictates "that if equitable estoppel is available at all against the government some form of affirmative misconduct must be shown in addition to the traditional requirements of estoppel." Zacharin v. United States, 213 F.3d 1366, 1371 (Fed. Cir. 2000). The evidence is undisputed that the incorrect recital in the "Whereas" clause was the result of unintentional mathematical errors, not affirmative misconduct.

United's final contention is that the board erred by failing to find a settlement agreement between the parties with respect to six of its ten claims. For the May 21, 1999 transaction to be an enforceable settlement agreement, United must prove "a mutual intent to contract including offer, acceptance, and consideration; and authority on the part of the government representative who entered or ratified the agreement to bind the United States in contract." Total Med. Mgmt., Inc. v. United States, 104 F.3d 1314, 1319 (Fed. Cir. 1997).

United bases its argument on the testimony of its representative at the meeting and his handwritten notes. According to United, the government made an unequivocal offer as to seven of its claims and United affirmatively accepted six, thus reaching an oral settlement. United's evidence was contradicted by the contracting officer, also present at the meeting, who claimed that the government was seeking a global settlement agreement of all claims and that the government needed additional materials before reaching agreement. The government also produced correspondence drafted

immediately after the meeting, which indicated that a settlement offer was neither made nor accepted.  On June 2, 1999, the Deputy Base Engineer wrote that United's view of events was wrong and the government in no way offered to settle the claims for $214,745.  And, the government also relies on a May 26, 1999, letter from United's counsel seeking further negotiations concerning two of the ten claims supposedly settled at the May 21, 1999 meeting.

In this battle of contradictory testimony we are left to review the board's findings, based in no small part on credibility, and the contemporaneous correspondence of the parties.  We agree with the board's conclusion that a final agreement was not reached; the parties were still in the process of negotiations.  "In the absence of contractual intent or sufficiently definite terms, no contractual obligations arise."  <u>Modern Sys. Tech. Corp. v. United States</u>, 979 F.2d 200, 202 (Fed. Cir. 1992).

<u>Conclusion</u>

Accordingly, the decision of the Armed Services Board of Contract Appeals is affirmed.

<u>AFFIRMED</u>
