Judge Green
delivered the opinion of the Court.*
From ease agreed, it appears that in 1813 and 1814, many companies of militia in the service of the Commonwealth passed over a bridge belonging to the intestate of the appellee, which was established, and the rates of toll fixed, by an act of Assembly. The tolls for the-passage of these troops, at the legal rate, amounted to % 317 45 cents. The intestate, in 1816, applied to the Executive for the payment of this account. They referred the accounts to the military accountant, and he allowed only $ 79 52 cents, as due upon them; for which the Governor gave an order to the Auditor to issue a warrant on the Treasurer, and charge it to the United States. The claimant refused to accept the smaller sum; and in 1825, the appellee, his administrator, claimed of the Auditor a warrant for the whole amount of $>317 45 cents, which he refused to issue. Thereupon, the appellee petitioned the Superior Court of Henrico for an appeal from the decision of the Auditor, which was allowed, and the decision reversed. The Superior Court directed a warrant to issue for the whole amount of the demand.
- The propriety of this order depends upon several acts of Assembly, the general act prescribing the duty of the Auditor of Public Accounts, and the acts providing for the payment of certain military expenses and the appointment of a military accountant.
The first of these acts is a general and permanent law, and directs that the Auditor shall audit all accounts, claims and demands whatsoever, against the public, arising under any law or resolution of the General Assembly, and grant to every public claimant authorised by law to demand the same, a warrant on the Treasurer for the sum due; and when he shall disallow or abate any article ofde *435 rnand against the Commonwealth, any person thinking himself aggrieved thereby may, by petition, appeal to theSuperi- or Court of Chancery or Superior Court of Law held at Richmond, for redress, and such Court shall proceed to do right therein; and a like petition shall be allowed in all other cases to any other person, who is entitled to demand against the Commonwealth any right in law or equity.
The act of January 8, 1814, provided for a particular occasion. After reciting that it was the duty of the U nited States to defray all expenses incurred in the defence of the United States, and especially such as were necessary to give effect to the requisitions of militia called out by the President of the United States in the service thereof; but no provision having been made by the United States for certain expenses rendered necessary by the march of certain detachments of militia to Norfolk and elsewhere, it provides, that the Executive be authorised to cause to be paid any expenditures heretofore incurred or hereafter to be incurred, for the support, equipments and transportation of any part of the militia to the place of rendezvous, which in their discretion may be deemed just and necessary, and appropriated $ 100,000 to the purposes of the act.
To enable the Executive to carry this act into effect, another act passed on the 1st of February, 1814, authorising the Executive to appoint a military accountant to perform such duties as they might assign to him, in the settlement of military claims and accounts.
The act of January 1814, provided for no other militia expenses than those necessary to place the militia under requisition for the service of the United States, at the appointed place of rendezvous; expenses which were properly payable by the United States, but which they had not provided for, as is expressly stated in the act. The moral obligation to pay those expenses devolved on them, and not on the State of Virginia; and without the provision made by the act of 1814, there would have been no legal or moral claim upon the State of Virginia to pay any *436 part of (hose expenses. That this was the class of expenses intended to be provided for by the act, appears not only from the terms of the act, but by the circumstances that no provision was made for supporting or defraying the expenses of the militia after they reached the place of rendezvous, nor' was there any law for employing any part of the militia in the service of the State, and paying their expenses. Both the claimant and the Executive understood that the troops, on account of which the charges in question were incurred, were troops in the service of the United States. The accounts were exhibited by the party as accounts against the United States; and the portion directed to be paid by the Executive, was directed to be charged to the United States. The Legislature, providing for the payment of those expenses which were properly chargeable directly upon the United States, might justly limit the advances to be made, by any rule, according to their discretion. They accordingly limited the payments to be made by the Executive, to such as in their discretion might be deemed just and necessary. A party, claiming under this act, can claim as a matter of legal right, only .so much as the Executive in their discretion choose to allow. The grounds upon which they disallowed the greater part of the claims in this case, do not appear; nor is it material that they should, since the subject was committed to their sound discretion. The Auditor had no authority to audit the accounts in question originally. His duty was, to issue his warrant for the sum directed by the Executive to be paid. He had no authority to control the judgment of the Executive in this particular, any more than he has to control the discretion of the Executive, the Courts of Justice, and other tribunals, to whose discretion is confided the making allowances to persons who render services to the public in many other instances, without any limit to that discretion. When there is such a limit fixed by law, it is the duty of the Auditor not to carry into effect any order transcending the legal limitation upon that discretion. In this case there was no such limit.
*437 We are not, however, at liberty to consider this as a case falling under the act of 1814. The case agreed expressly states, that the troops were in the service of the Commonwealth. By what authority they were so, is not stated. There was no law or resolution of the General Assembly, that authorised any militia to be employed in the service of the State, or providing for the payment of the expenses thereby incurred. In such a case, the Auditor could audit no account, nor issue any warrant, for such expenses. His power is to audit accounts and issue warrants to those authorised hy law to demand the latter, for demands arising under some law or resolution of the General Assembly. If in a case of emergency, the Executive were to call the militia into service, the expenses incurred thereby could only be provided for by subsequent legislation. The pay and subsistence of the troops, and other expenses incident to their service, could not be adjusted by the Auditor and the Courts óf Justice upon the principles of a quantum meruit or quantum valebal.
That part of the- general law which authorises an original petition, upon which right is to be done to any person having any demand in law or equity against the Commonwealth, cannot, apply to sucha case as this. Such demand must be founded upon some existing law. No such demand can exist against the public upon the principles of implied assumpsits, unless it be founded upon some contract authorised by law, made by a public agent, or upon the payment to the Commonwealth, of money which she was not entitled to claim.
If any injustice veas done to the complainant by the Executive, in rejecting the larger part of his claim, he can only be relieved by an application to the Legislature. The order must be reversed, and the petition dismissed.

 Tiie President and Judge Coadter, absent.