Present:  Carrico, C.J., Lacy, Keenan, Koontz, Kinser, and
Lemons, JJ.

THE DR. WILLIAM E.S. FLORY
SMALL BUSINESS DEVELOPMENT
CENTER, INC.

v.  Record No. 000961     OPINION BY JUSTICE ELIZABETH B. LACY
                                    March 2, 2001
COMMONWEALTH OF VIRGINIA,
DEPARTMENT OF BUSINESS
ASSISTANCE, ET AL.

        FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                    Barnard F. Jennings, Judge

    In this appeal, The Dr. William E.S. Flory Small Business

Development Center, Inc. (the Center) seeks reversal of the

trial court's judgment denying its claim against the Virginia

Department of Business Assistance (VDBA) for services rendered

by the Center.  The issues we address are whether the Virginia

Public Procurement Act, Code §§ 11-35 to -80 (the Procurement

Act), applies to the Center's contractual claims, and, if so,

whether the Center complied with the notice provisions of that

Act.  We also consider whether the Commonwealth can be held

liable for claims based on quasi-contractual theories of

recovery.

    The United States Small Business Administration (SBA)

administers a federal grant program to provide assistance to

small businesses throughout the country.  The grant monies are

distributed by the SBA to "lead agencies," which in turn

allocate the federal funds to local small business development

centers (SBDC) pursuant to written agreements between the SBDC and the lead agency. The SBA releases the funds after approving the budget of a SBDC as submitted by the lead agency. Federal funds provide fifty percent of the SBDC's budget and the SBDC must match the federal funding through local sponsors, private grants, donations, or other similar sources. Periodically throughout the year, the SBDC submits invoices to the lead agency detailing its expenditures, and the lead agency reimburses the SBDC with the federal funds based on the invoices received.

The lead agency for this program in Virginia is the VDBA. The Center is a non-stock corporation created by the Prince William Industrial Development Authority to operate as a SBDC in Prince William County. From 1991 to 1998, the Center provided various services to small businesses in Prince William County and the surrounding area under the SBA federal assistance program. The Center was reimbursed by the VDBA for these services pursuant to a series of Memoranda of Agreement executed annually by the Center and the VDBA.

By letter dated December 18, 1998, the VDBA informed the Center that funding of approximately $33,000 had been authorized for the months of January and February 1999, but that "reimbursement for expenses shall not be disbursed until [the Center] has returned a signed copy of the Memorandum of

Agreement."  A dispute arose between the Center and the VDBA regarding the management of the Center.  The Center refused to sign the written Memorandum of Agreement for 1999 proffered by the VDBA until certain terms were negotiated but continued to provide the same services as it had in past years.

In June 1999, the Center submitted invoices for reimbursement of approximately $89,000 for services rendered and expenses incurred from January through June 1999.  The VDBA refused to pay the invoices because no memorandum of agreement had been signed.  The Center filed suit against the VDBA, seeking reimbursement of its expenditures for 1999.

In an amended motion for judgment joining the Comptroller as a defendant, the Center requested a total of approximately $210,000 plus interest, costs, and attorneys' fees.  The Center sought recovery based on alternative theories of express oral promise, quantum meruit, account stated, and contract implied by acceptance of services.  The VDBA filed a plea in bar, contending that the action was barred because the Center did not comply with the notice provisions of the Procurement Act.  The trial court sustained the VDBA's plea in bar and dismissed the case.

The Center appeals the trial court decision, arguing that the Procurement Act does not bar its claims because (1) the Procurement Act applies only to services acquired from

nongovernmental sources, and the Center does not qualify as a nongovernmental source; (2) the Procurement Act does not apply to the Center's claims that are based on quasi-contract; and (3) even if the Procurement Act applies, the Center complied with the notice provisions of the Act.[1]  We will consider these assertions in order.

I.

The Procurement Act sets out the "public policies pertaining to governmental procurement from nongovernmental sources," and requires that all "public contracts with nongovernmental contractors . . . for the purchase of services . . . shall be awarded" as provided in the Act, "unless otherwise authorized by law."  Code §§ 11-35(B), -41(A).  The term "nongovernmental source" is not defined in the Procurement Act.  However, the Center asserts that because it was created by a political subdivision of the Commonwealth and engages in activities which are exclusively for " 'charitable and educational purposes including lessening the burdens of federal, state and local government' " by assisting small businesses, it performs governmental functions and, thus, is not a nongovernmental source.  "In effect," the Center argues,

_____

[1] The Center's claims are not based on any written contract.  However, because the Center does not challenge the applicability of the Procurement Act to oral contracts, for purposes of this appeal we assume without deciding that the Procurement Act applies to oral contracts.

4

it is a " 'public body' as that term is defined in § 11-37" of the Procurement Act.

We disagree with the Center. The Procurement Act defines "Public body" as an entity "created by law to exercise some sovereign power or to perform some governmental duty, and empowered by law to undertake the activities described" in the Procurement Act. Code § 11-37. The Center is not an entity "created by law" to "perform [a] governmental duty." As the Center recites, it was formed by the Prince William Industrial Development Authority, the directors of the Authority comprised the initial board of directors of the Center, and, in the event of the dissolution of the Center, all remaining assets are to be distributed to the Authority or to political subdivisions that contributed funds to the Center during the year of dissolution. Although that Authority was created by ordinance pursuant to Code § 15.2-4903(A), the role of the Authority in incorporating the Center does not qualify the Center as an entity "created by law" to "perform [a] governmental duty" within the Procurement Act's definition of "Public body."

The Center further argues that it qualifies as an entity "created by law" for purposes of the Procurement Act because, as a corporation, it is a "creature of statute." Adopting this argument would transform virtually every corporation into

5

a public body if the corporation engages in any activity touching on a governmental duty.  Such a construction of the definition of "Public body" is not consistent with the purpose of the Procurement Act and we reject it.

II.

The Center next asserts that the Procurement Act does not apply to its claims for relief based on theories of quasi-contract — quantum meruit and contract implied in law, Counts 2 and 4 respectively of the amended motion for judgment.[2] Under these theories, even though there is no contract, the law imposes a promise to pay for services rendered to avoid unjust enrichment.  Kern v. Freed Co., 224 Va. 678, 680-81, 299 S.E.2d 363, 364-65 (1983).  To obtain relief based on these theories, the Center asserts that compliance with Code § 2.1-223.1, not the Procurement Act, was required and that it complied with the requirements of that section.

Code § 2.1-223.1 provides that a person "having any pecuniary claim against the Commonwealth upon any legal ground" must present the claim to the head of the agency responsible for the alleged claim.  If the head of the agency disallows the claim, Code § 8.01-192 provides that a right of action accrues and "the person presenting such claim may

_____

[2] The Center's claims of express oral promise and account stated are contract claims, not claims based on theories of quasi-contract.

6

petition an appropriate circuit court for redress."  Though we have not considered these statutes in the context of a claim based on the quasi-contractual theories pled in this case, the Court in Commonwealth v. Pierce, 25 Va. (4 Rand.) 432 (1826), addressed a similar issue.

In Pierce, a claim was presented to the state auditor for payment of certain bridge tolls incurred by the militia.  When the auditor denied part of the claim, the claimant filed for relief pursuant to an 1814 general law which allowed a claimant to appeal the auditor's denial of a claim to the law or equity court in the City of Richmond and allowed "a like petition . . . in all other cases to any other person, who is entitled to demand against the Commonwealth any right in law or equity."  Id. at 435 (discussing Rev. Code 1814, ch. 85 §§ 2, 6).  Finding that no statute authorized the payment of the claimed bridge tolls, the Court determined that the auditor had no authority to audit the claim or issue a warrant for payment and that neither the auditor nor the courts could provide for the payment of these expenses "upon the principles of a *quantum meruit* or *quantum valeba[n]t*."  Id. at 437.  The Court further determined that the filing of an original petition under the statute by one "who is entitled to demand against the Commonwealth any right in law or equity" required that such demand

be founded upon some existing law.  No such demand
can exist against the public upon the principles
of implied *assumpsits*, unless it be founded upon
some contract authorized by law, made by a public
agent, or upon the payment to the Commonwealth, of
money which she was not entitled to claim.

Id.

This conclusion was based on principles of sovereign immunity, not on the construction of specific language in the 1814 statute.  Under the common law, sovereign immunity did not shield the sovereign from liability for its valid contracts.  Wiecking v. Allied Med. Supply Corp., 239 Va. 548, 551-52, 391 S.E.2d 258, 260 (1990).  However, quasi-contractual doctrines are premised on the absence of a valid contract.  The Commonwealth's common law liability for its contracts does not encompass quasi-contractual claims, and any relief based on such claims must be authorized through a statute abrogating the Commonwealth's sovereign immunity.

The statute considered by the Court in Pierce was a predecessor to current Code §§ 2.1-223.1 and 8.01-192.  Like the earlier legislation, the current statutes contain procedural requirements setting out the manner in which a claim is presented.  Neither section establishes the claimant's right to lodge a claim against the sovereign or the sovereign's liability for such claim.  Code § 2.1-223.1, in referring to the presentation of a claim "upon any legal ground," like its predecessor, implies that the right to make

8

the claim is not established by that statute, but must be found elsewhere.

The Center provides no statutory or case authority, and we can find none, for the proposition that the Commonwealth has waived its immunity from liability under theories of quasi-contract.[3]  Therefore, we conclude that, regardless of the requirements of the Procurement Act, the Center cannot recover against the Commonwealth on the quasi-contractual theories pled in Counts 2 and 4 of its amended motion for judgment.

### III.

The Center next argues that even if the Procurement Act applies, the trial court erred in granting the VDBA's plea in bar because the Center complied with the requirement of Code § 11-69(A) that written notice of the intent to file a claim be given "at the time of the occurrence or beginning of the

---

[3] Recovery on the basis of quantum meruit has been allowed against a municipality exercising a proprietary function. Leonard v. Town of Waynesboro, 169 Va. 376, 193 S.E. 503 (1937); Mount Jackson v. Nelson, 151 Va. 396, 145 S.E. 355 (1928).  However, that analysis is not applicable to the powers and protections of the state.  See Hoggard v. City of Richmond, 172 Va. 145, 147-48, 200 S.E. 610, 611 (1939).
Although Trinkle v. Commonwealth, 170 Va. 429, 438, 196 S.E. 652, 656 (1938), did state that, in the absence of a definite contract due to no meeting of the minds, a contractor should nevertheless be entitled to compensation on the basis of quantum meruit for work accepted by the Commonwealth's Highway Department, recovery in that case was not allowed on the basis of quantum meruit.

work upon which the claim is based." In its response to the VDBA's request for admissions, the Center admitted that it did not "specifically submit" such a notice. The Center argues here, however, that it substantially complied with this notice requirement when it submitted its invoices. We conclude, however, that, in this case, the submission of invoices did not qualify as compliance with the requirement in Code § 11-69(A) that a notice of intention be filed with the Commonwealth.

The General Assembly has imposed certain procedures and limitations on the processing and enforcement of contract claims which are subject to the Procurement Act. These are mandatory, procedural requirements which must be met in order for a court to reach the merits of a case.[4] Welding, Inc. v. Bland County Serv. Auth., 261 Va. ___, ___ S.E.2d ___ (2001), decided today. However, the statute does not specifically

_____

[4] We recognize that in Sabre Construction Corp. v. County of Fairfax, 256 Va. 68, 72, 501 S.E.2d 144, 147 (1998), we held that a similar filing requirement of the Procurement Act, Code § 11-66, was a condition precedent to maintaining the action, and the failure to comply with the requirement barred the action. However, in that case the claimant was an unsuccessful bidder who was challenging the county's award of a bid to another party. Because there was no right at common law to bring such an action, the Procurement Act in that instance created "the substantive right to file an action against a county," and, under those circumstances, any special limitation on the exercise of that right became a part of the substantive cause of action and thus a condition precedent.

require that the notice of intent be separate and distinct from the claim itself in time or in form.  By identifying more than one event that triggers the filing of an intent to file a claim, the statute acknowledges that not all claims will arise under the same circumstances.  For example, a dispute over payment under the contract may not arise until the work is completed, preventing a contractor from giving notice of an intent to file a claim for such payment at the "beginning of the work upon which the claim is based."  Thus, the timing and form of an alleged notice of intent pursuant to Code § 11-69(A) requires an examination of the circumstances of each case.

Here, the VDBA informed the Center by letter dated December 18, 1998 that the VDBA would not reimburse the Center for services rendered in 1999 "until [the Center] ha[d] returned a signed copy of the Memorandum of Agreement."  The Center nevertheless continued to provide its services without a signed memorandum of agreement for 1999.  The Center was aware of the condition for payment of its expenses for more than six months before it submitted its invoices.  At no time before submission of its invoices in June 1999 did the Center inform the VDBA that it intended to claim reimbursement for those services in the absence of a memorandum of agreement. Under these circumstances, the invoices filed in June 1999

11

were insufficient to comply with the provision of Code § 11-69(A) requiring a notice of intent to file a claim at the "time of the occurrence or beginning of the work upon which the claim is based."

The Center also argues that its claim was valid because it complied with the notice requirements of Code §§ 2.1-223.1 and 8.01-192.  However, as noted by the VDBA, the Procurement Act is a specific statute relating to the acquisition of services by public bodies and thus prevails over the more general statutes relating to the presentation of pecuniary claims against the Commonwealth.  See Commonwealth v. Brown, 259 Va. 697, 706, 529 S.E.2d 96, 101 (2000).

In conclusion, for the reasons stated, we hold that the trial court did not err in dismissing the Center's motion for judgment with prejudice, and we will affirm the judgment of the trial court.

Affirmed.