Present:  All the Justices

XL SPECIALTY INSURANCE COMPANY

v.  Record No. 041271    OPINION BY JUSTICE ELIZABETH B. LACY
                                        April 22, 2005
COMMONWEALTH OF VIRGINIA,
DEPARTMENT OF TRANSPORTATION

            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                      Theodore J. Markow, Judge

     XL Specialty Insurance Company (XL), the surety on

performance and payment bonds issued for two highway

construction contracts, appealed the judgments of the circuit

court holding that sovereign immunity barred XL's breach of

contract actions against the Virginia Department of

Transportation (VDOT).  The Court of Appeals of Virginia

transferred the appeals to this Court pursuant to Code § 8.01-

677.1.  In addition to assigning error to the rulings of the

circuit court, XL asserted that the Court of Appeals

improperly transferred the appeals to this Court.  We conclude

that jurisdiction is in the Court of Appeals because XL's

ability to file its civil actions against VDOT required

compliance with the administrative provisions for claims

resolution set out in Code § 33.1-386, and, therefore, the

cases are appeals from a final decision of a circuit court "on

appeal from . . . a decision of an administrative agency."

Code § 17.1-405(1).

                       Facts and Proceedings

Bravos Concrete, Inc. (Bravos) contracted with VDOT to perform two public construction contracts, one in Chesterfield County and the other in York County. XL was the surety for payment and performance bonds on both contracts. Bravos defaulted on the construction projects, and VDOT required that XL complete the unfinished work. XL and VDOT executed takeover agreements for both projects, and XL completed the projects.

XL submitted a demand for payment of the costs of repairing work allegedly not completed or defectively completed by Bravos but for which Bravos had been paid. XL pursued its claims in accord with the provisions of Code § 33.1-386. Following a hearing, the Deputy Commissioner denied XL's claims. XL then filed two motions for judgment, one for each construction project, in the Circuit Court of the City of Richmond. The motions for judgment contained two counts, each asserting a claim based on breach of the construction contract by VDOT.[1] XL did not allege breach of the takeover agreements.

---

[1] The construction contract, performance bond, and takeover agreement for the Chesterfield County project were exhibits to the motion for judgment regarding that project. Those same documents were exhibits to the motion for judgment regarding the project in York County. The performance bond is the only contract in the record regarding the York County project.

2

VDOT filed pleas of sovereign immunity and motions to dismiss in each case arguing that there was no express contract between VDOT and XL and, therefore, XL was not entitled to the waiver of sovereign immunity for contract disputes. XL argued that its actions were not barred by sovereign immunity because the bonds and construction contracts constituted an express contract between XL and VDOT or, alternatively, that XL, as subrogee, assumed the status of the contractor, Bravos.

Following briefing and oral argument, the trial court issued a letter opinion and entered an order in each case sustaining VDOT's pleas of sovereign immunity and granting VDOT's motions to dismiss. XL filed motions asking the circuit court to reconsider its rulings, or, in the alternative, to grant XL leave to amend the motions for judgment to include allegations of breach of the takeover agreements. The circuit court denied these motions.

XL filed notices of appeal in each case with the Court of Appeals. The Court of Appeals combined the two appeals, and, sua sponte, transferred the case to this Court stating that it "does not have jurisdiction." XL filed a motion for reconsideration, which the Court of Appeals denied.

Discussion

XL raises six assignments of error.  Before we can address those assignments of error dealing with the actions of the trial court, we must resolve a threshold issue raised by XL.  XL asserts that jurisdiction of this appeal lies with the Court of Appeals, not this Court.[2]

The Court of Appeals has jurisdiction over appeals from a circuit court in cases that were appeals "from . . . a decision of an administrative agency."  Code § 17.1-405(1).  In Commonwealth v. E.W. Yeatts, Inc., 233 Va. 17, 353 S.E.2d 717 (1987), we concluded that an appeal from a circuit court judgment against VDOT awarding a highway contractor additional compensation under a construction contract was within the jurisdiction of the Court of Appeals.  233 Va. at 24, 353 S.E.2d at 721.  This conclusion was based on the holdings that VDOT is an administrative agency and that the contractor's right to file the civil action under Code § 33.1-387 was dependent upon invoking the administrative review procedures of Code § 33.1-386.  Id. at 22-24, 353 S.E.2d at 720-21.  Compare Allstar Towing, Inc. v. City of Alexandria, 231 Va. 421, 423-24, 344 S.E.2d 903, 905 (1986) (where governing statutes make instituting a separate legal action an alternative to invoking administrative procedures, appeal of

_____

[2] We treat XL's appeals from the judgments of the circuit court as a single appeal based on the transfer order of the

4

such a court action is not appeal from the decision of an administrative agency).

In this appeal, there is no dispute that VDOT is an administrative agency for purposes of Code § 17.1-405(1). Thus, if XL's right to file the instant action was dependent on invoking the administrative review procedures of Code § 33.1-386, jurisdiction of this appeal lies in the Court of Appeals.

Code § 33.1-387 provides in pertinent part

> As to such portion of the claim as is denied by the Commonwealth Transportation Commissioner, the contractor may institute a civil action for such sum as he claims to be entitled to under the contract for himself . . . by the filing of a petition in the Circuit Court . . . . The submission of the claim to the Department of Transportation within the time and as set out in § 33.1-386 shall be a condition precedent to bringing an action under this chapter . . . .

The Commonwealth argues that this section does not require XL to comply with the statutory administrative process of Code § 33.1-386 because the section applies to contractors, not to sureties. XL replies that it was a contractor with VDOT by virtue of the "tripartite agreement" arising from the performance bond and the construction contract. XL acknowledges that neither the construction contract nor the performance bond is a direct contract between XL and the Commonwealth. Nevertheless, citing cases in which this Court

Court of Appeals combining the two appeals.

has discussed such "tripartite agreements," XL concludes that a "direct contractual relationship" exists between XL and VDOT. We disagree.

Our cases have recognized the rights and duties among the parties to construction contracts and performance bonds, First Virginia Bank-Colonial v. Baker, 225 Va. 72, 77, 301 S.E.2d 8, 11 (1983); American Surety Co. v. Plank & Whitsett, Inc., 159 Va. 1, 10-13, 15-17, 165 S.E. 660, 663-66 (1932), and that such contracts must be read together in determining the scope of those rights and duties, Noland Company v. Realty Corporation, 206 Va. 938, 942, 147 S.E.2d 105, 108 (1966). None of these cases, however, held that a direct contractual relationship is established between non-signatories to these contracts by virtue of related rights and duties that arise from such separate contracts.

Other courts have specifically held that the rights and duties arising from such separate contracts do not create a contractual relationship. In Ransom v. United States, 900 F.2d 242 (Fed. Cir. 1990), the surety asserted that an express contract existed between the government, the contractor, and the surety because the written contract between the government and the contractor created "implied obligations to [the surety] that the government deal fairly and in good faith with [the surety]." 900 F.2d at 244. The United States Court of

Appeals for the Federal Circuit rejected this argument, finding no express contract was intended and "none existed." Id. No government agent said anything that could be construed as intending to obligate the government to the surety, the government did not sign the bond or any other document with the surety, and there was no language in the bonds purporting to obligate the government to the surety. Id. See also Insurance Co. of the West v. United States, 243 F.3d 1367, 1370 (Fed. Cir. 2001); Admiralty Constr. Co. v. Dalton, 156 F.3d 1217, 1220-21 (Fed. Cir. 1998).

As in these federal cases, neither the contracts nor the record here support a conclusion that the performance bond and construction contract created an express contract between VDOT and XL. XL's "tripartite agreement" theory is insufficient to make XL a contractor with VDOT for purposes of Code § 33.1-387 and thus subject to the administrative process requirements of Code § 33.1-386.

XL also asserted that it qualified as a "contractor" based on the doctrine of equitable subrogation. As a performing surety, XL maintains that the doctrine of equitable subrogation placed it "in the shoes" of Bravos and thus, in the posture of "contractor" in the construction contract between Bravos and VDOT. To address XL's argument we first

review the doctrine of equitable subrogation as it applies to the facts of this case.

Equitable subrogation is subrogation that arises by operation of law.  It is not based on contract or privity of parties, but is "purely equitable in nature, dependent on the facts and circumstances of each particular case."  Centreville Car Care, Inc. v. North Am. Mortgage, 263 Va. 339, 345, 559 S.E.2d 870, 872 (2002) (quoting Federal Land Bank of Baltimore v. Joynes, 179 Va. 394, 402, 18 S.E.2d 917, 920 (1942)).  When a principal defaults on a contract guaranteed by a performance or payment bond and the surety performs on the bond, principles of surety law and the doctrine of equitable subrogation impose certain rights and duties running between the surety, principal, and obligor, and allow the surety to enforce such rights and duties.  See Dickenson v. Charles, 173 Va. 393, 400, 4 S.E.2d 351, 353 (1939) (quoting Kendrick v. Forney, 63 Va. (22 Gratt.) 748, 749-50 (1872)); Fulkerson v. Taylor, 100 Va. 426, 432, 41 S.E. 863, 865 (1902); Restatement (Third) of Suretyship and Guaranty § 27 (1996).

The surety's enforcement of the principal's rights is often referred to as "stepping into the shoes of" the principal.  The surety, however, does not actually "step into the shoes of" the principal because, by defaulting, the principal lost the right to enforce the contract provisions.

For example, if a contractor defaults on a bonded construction contract, a performing surety may recover retainage held by the owner even though the contractor could not recover such retainage. See International Fidelity Ins. Co. v. Ashland Lumber Co., 250 Va. 507, 511, 463 S.E.2d 664, 667 (1995).

Similarly, if the owner and contractor engage in practices that constitute a material change in the construction contract provisions, and the contractor subsequently defaults on the contract, the surety is entitled to a discharge of its obligation to pay the contractor's debt. Southwood Builders, Inc. v. Peerless Ins. Co., 235 Va. 164, 168-71, 366 S.E.2d 104, 106-08 (1998). And this Court has held that a surety could recover amounts improperly paid by the owner to the contractor because "[w]hen the surety is required to make reimbursements for a loss occasioned by the default of the principal, it has a right to require the owners to show how and in what manner they have performed their part of the contract. . . . The obligee in the bond is not only required to exercise good faith with the surety at the time the obligations are assumed, but this good faith must be kept inviolate in all subsequent transactions affecting their rights and obligations created by the contract and the bond." Plank & Whitsett, Inc., 159 Va. at 17, 165 S.E. at 666.

These examples of the application of equitable subrogation show that the rights assumed by the surety when the surety has performed its obligations under the bond allow the surety to assert claims based on the underlying construction contract which, for various reasons, the contractor could not assert. Thus, because a surety claiming equitable subrogation is entitled, under certain circumstances, to enforce contractual claims beyond those the contractor could raise, a surety does not simply "step into the shoes of" the contractor.

We have not previously considered whether a surety advancing a claim relating to the construction contract based on equitable subrogation is a "contractor" for purposes of Code § 33.1-387. Whether equitable subrogation qualifies the surety as a "contractor" for purposes of the analogous provisions of the federal Contract Dispute Act, 42 U.S.C. § 601 et seq., has been considered by various federal courts. In Transamerica Ins., Co. v. United States, 31 Fed. Cl. 602 (1994), the United States Court of Federal Claims held that a surety "becomes a contractor subject to the provisions of the CDA by virtue of the takeover agreement," not by virtue of a claim relating to the underlying construction contract based on equitable subrogation. Id. at 606-07 n.2. While the Court of Claims did not discuss the construction of the CDA in

10

making its decision, the United States Court of Appeals for the Federal Circuit has strictly interpreted and enforced the provisions of the CDA, holding that its provisions were applicable only to a contractor – a party to a government contract. A claim based on equitable subrogation does not make a surety a "contractor" for purposes of the CDA. Fireman's Fund Ins. Co. v. Secretary of the Navy, 313 F.3d 1344, 1351 (Fed. Cir. 2002); Admiralty Constr. Co. v. Dalton, 156 F.3d at 1220-21.

VDOT has argued in this case, though not in connection with this jurisdictional issue, that Code § 33.1-387 must be narrowly construed because it is a waiver of the Commonwealth's sovereign immunity. See Rector & Visitors of the Univ. of Va. v. Carter, 267 Va. 242, 244-45, 591 S.E.2d 76, 78 (2004); Elizabeth River Tunnel Dist. v. Beecher, 202 Va. 452, 457, 117 S.E.2d 685, 689 (1961). We have not previously determined that this statute is such a waiver and do not make that decision here.[3] Nevertheless, whether this statute waives immunity for actions based on contracts or sets

---

[3] "[W]e have construed Code § 8.01-192 and its statutory predecessors as the Commonwealth's general consent to be subjected to suit in its own courts in contract cases." Wiecking v. Allied Medical Supply Corp., 239 Va. 548, 552-53, 391 S.E.2d 258, 261 (1990). Procedures for the processing of such contract claims and enforcement of such claims affect the remedy, "not the validity of the obligation on which the claim is based." Id. at 552, 391 S.E.2d at 261.

11

out the process which must be followed in filing a contract claim against the Commonwealth, it must be strictly construed. Billups v. Carter, 268 Va. 701, 708-10, 604 S.E.2d 414, 418-19 (2004); Melanson v. Commonwealth, 261 Va. 178, 182-84, 539 S.E.2d 433, 435 (2001); Halberstam v. Commonwealth, 251 Va. 248, 250-51, 467 S.E.2d 783, 784 (1996); Hicks v. Anderson, 182 Va. 195, 199, 28 S.E.2d 629, 630 (1944).

Strictly construing the term "contractor" in Code § 33.1-387 limits its application to those entities that have a direct contract with VDOT.  This construction is consistent with the statutory framework for filing contract-based claims against VDOT.

Code § 33.1-192.1 provides in pertinent part that "[n]o suit or action shall be brought against [VDOT] by a contractor or any persons claiming under him . . . on any contract . . . unless the claimant shall have exhausted the review process provided by Code § 33.1-386."  (Emphasis added).  This provision includes situations where a contractor's claims have been acquired by another and that entity seeks to assert the claims against VDOT.  If, as XL suggests, the term "contractor" in Code § 33.1-387 includes entities that are "claiming under" the contractor, this provision of Code § 33.1-192.1 would be unnecessary and meaningless.

12

For these reasons, we conclude the term "contractor" in Code § 33.7-387 applies only to those entities with a direct contractual relationship with VDOT and that the doctrine of equitable subrogation does not qualify XL as a "contractor" under that statute. Accordingly, XL was not entitled or required to proceed under Code § 33.1-387. The provisions of Code § 33.1-192.1, however, apply to XL because XL was an entity "claiming under" the contractor on a contract executed with VDOT.[4] Because Code § 33.1-192.1 requires compliance with Code § 33.1-386, XL's right to file a civil action was dependent on its compliance with the administrative procedures prescribed by that section. Thus, XL's civil action was an appeal from the decision of an administrative agency and its appeal from the judgment of the circuit court was within the jurisdiction of the Court of Appeals.

---

[4] In APAC-Virginia, Inc. v. Virginia Dep't of Highways & Transp., 9 Va. App. 450, 388 S.E.2d 841 (1990), the Court of Appeals held that the phrase "persons claiming under him" did not allow a contractor to assert its subcontractor's claim based on the subcontract against VDOT because there was no privity between the subcontractor and VDOT. 9 Va. App. at 453, 388 S.E.2d at 843. The court stated in that case, "An action on a contract must be brought in the name of the party in whom the legal interest is vested." Id. at 452, 388 S.E.2d at 842. The Court of Appeals did not consider whether the status of a surety was one "claiming under" the contractor, but the record reflects that the Commonwealth, in maintaining that the lack of privity precluded the contractor from asserting the subcontractor's claim, specifically agreed that Code § 33.1-192.1 applied to a contractor's surety.

13

Our conclusion requires that we return this case to the Court of Appeals for further consideration. The Commonwealth suggests, however, that the appeal should be dismissed because XL did not file a notice of appeal to this Court regarding the jurisdictional issue. The Commonwealth provides little support for its position other than stating at oral argument that XL failed to perfect its appeal because no notice of appeal was filed, citing Rule 5:14. We reject the suggestion that a notice of appeal was required in this case. Rule 5:14 does not apply to transfers of appeal under Code § 8.01-677.1,[5] and nothing in that section requires that a notice of appeal be filed with the Court of Appeals when that court transfers an appeal to this Court. Unlike the situation in E.W. Yeatts, where the appeal was filed in the wrong court (see 233 Va. at 19, 353 S.E.2d at 717), in this case, XL filed the appeal in the correct court.

---

[5] Code § 8.01-677.1 provides in pertinent part:

[N]o appeal which was otherwise properly and timely filed shall be dismissed for want of jurisdiction solely because . . . the appellate court in which it was filed thereafter rules that it should have been filed in the other court. In such event, the appellate court so ruling shall transfer the appeal to the appellate court having appropriate jurisdiction for further proceedings in accordance with the rules of the latter court. The parties shall be allowed a reasonable time to file such additional or amended pleadings as may be

We also reject XL's suggestion that even though the case was properly appealed to the Court of Appeals, the provisions in Code § 8.01-677.1, directing that no appeal should be dismissed if filed in the wrong court, allow this Court to exercise jurisdiction and resolve the appeal on the merits. The language cited by XL is not applicable here because this appeal will not be dismissed but will be remanded for further consideration. Nothing in that section suggests that if the transferee court determines the transfer was made in error and jurisdiction resides in the other appellate court, the transferee court should nevertheless proceed to resolve the matter on the merits.

For the reasons stated, we will reverse the Court of Appeals' transfer order and return XL's appeal to the Court of Appeals for consideration under the Court's appellate jurisdiction set forth in Code § 17.1-405(1).

<u>Reversed and returned.</u>

---

appropriate to proceed with the appeal in the appellate court to which the appeal is transferred.

15