COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judge Benton and Retired Judge Bumgardner[*]
Argued at Richmond, Virginia


XL SPECIALTY INSURANCE COMPANY
                                                          OPINION BY
v.        Record No. 0628-04-2              CHIEF JUDGE JOHANNA L. FITZPATRICK
                                                          JANUARY 17, 2006
COMMONWEALTH OF VIRGINIA,
  DEPARTMENT OF TRANSPORTATION


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Theodore J. Markow, Judge

Andrew J. Terrell (Jane Saindon Dudley; Robert F. Carney;
Whiteford, Taylor & Preston, LLC, on briefs), for appellant.

Richard Tyler McGrath, Senior Assistant Attorney General
(Jerry W. Kilgore, Attorney General; Judith Williams Jagdmann,
Attorney General; Maureen Riley Matsen, Deputy Attorney
General; Steven O. Owens, Senior Assistant Attorney General, on
brief), for appellee.

Amicus Curiae:  The Surety Association of America (Edward G.
Gallagher; Wickwire Gavin, P.C., on brief), for appellant.


Appellant, XL Specialty Insurance Company (XL), argues that the trial court erred by:

(1) granting the Commonwealth of Virginia, Department of Transportation's (VDOT's) motions

to dismiss XL's claims because they were barred by sovereign immunity and (2) failing to allow

XL leave to amend its motions for judgment after VDOT's defensive pleas had been sustained.[1]

---

[*] Judge Bumgardner participated in the hearing and decision of this case prior to the
effective date of his retirement on December 31, 2005.

[1] Appellant presented six assignments of error to the Supreme Court of Virginia.  The
sixth, whether this Court has jurisdiction, is now moot.  See XL Specialty Insurance Co. v.
Commonwealth, 269 Va. 362, 611 S.E.2d 356 (2005) (remanding the case to this Court for
consideration).  The other five have been consolidated into these two issues.

We hold that the trial court properly dismissed XL's claims based on sovereign immunity, as XL was not a party to the contract on which it brings this claim and there is no explicit waiver of sovereign immunity for equitable claims of subrogation. However, we also hold that the trial court abused its discretion in failing to allow XL leave to amend its motions for judgment and, therefore, we affirm in part, reverse in part, and remand the case to the trial court for action consistent with this opinion.

## I. BACKGROUND

In 1998, Bravos Concrete, Inc. (Bravos) contracted with VDOT to complete two construction projects, one in Chesterfield County and the other in York County. The Commonwealth required Bravos to guarantee its performance, and as a result Bravos entered into a contract with XL as the surety for payment and for performance on both contracts.[2] Bravos defaulted on the contracts in 1999, and VDOT required XL to complete the unfinished work. XL entered into takeover agreements with VDOT, under which it agreed to arrange for the completion of the contracts. After the construction was completed, XL submitted a payment request to VDOT for its completion of work defectively done by Bravos for which Bravos had been paid by VDOT. The alleged amount of the overpayments was approximately $530,000 for the Chesterfield project and $210,000 for the York project. VDOT denied the claim, and XL requested that VDOT hold a hearing pursuant to Code § 33.1-386.[3] Following that hearing, the deputy commissioner denied XL's claims but offered a settlement of $13,000.

---

[2] The bonds were actually issued by Intercargo Insurance Company, the predecessor in interest to appellant.

[3] Code § 33.1-386 provides in part:

> A. Upon the completion of any contract for the construction of any
> state highway project awarded by the Commonwealth
> Transportation Board to any contractor, if the contractor fails to
> receive such settlement as he claims to be entitled to under the

- 2 -

XL rejected the proposed settlement and filed two motions for judgment, one for each

project, in the Circuit Court for the City of Richmond. Each motion for judgment asserted two

counts of breach of contract. XL did not include in the suits a claim for breach of the takeover

agreements. VDOT filed motions to dismiss the motions for judgment because sovereign

immunity barred any recovery. The trial court, by letter opinion, granted the motions to dismiss.

XL filed additional motions requesting that the trial court reconsider its determination or, in the

alternative, grant it leave to amend the motions for judgment to include allegations of breach of

contract for himself or for his subcontractors or for persons furnishing materials for the contract for costs and expenses caused by the acts or omissions of the Department of Transportation, he may, within sixty days from the time of notification of the Department's final estimate, submit to the Department of Transportation, through proper administrative channels as determined by the Department, a written claim for such amount to which he deems himself, his subcontractors, or his material persons entitled under the contract. The claim shall set forth the facts upon which the claim is based, provided that written notice of the contractor's intention to file such claim shall have been given to the Department at the time of the occurrence or beginning of the work upon which the claim and subsequent action is based. Within ninety days from receipt of such claim, the Department shall make an investigation and notify the claimant in writing by registered mail of its decision. The claimant and the Department may, however, mutually extend such ninety-day period for another thirty days.

B. If dissatisfied with the decision, the claimant shall, within thirty days from receipt of the Department's decision, notify the Commonwealth Transportation Commissioner, in writing, that he desires to appear before him, either in person or through counsel, and present any additional facts and arguments in support of his claim as previously filed.

C. The Commissioner shall schedule such appearance to be held within thirty days of receiving the claimant's written request. The claimant and the Commissioner may, however, mutually agree to schedule such appearance to be held after thirty days but before sixty days from the receipt of the claimant's written request.

D. Within forty-five days from the date of the appearance before him, the Commissioner shall make an investigation of the claim and notify the contractor in writing of his decision.

the takeover agreements.  The trial court denied the motions to reconsider and the request to amend the initial motions for judgment and dismissed the cases.

XL filed a timely notice of appeal to this Court.  However, we transferred the appeal to the Supreme Court of Virginia pursuant to Code § 8.01-677.1.  See XL Specialty Insurance Co., 269 Va. at 362, 611 S.E.2d at 356.  The Supreme Court determined, *inter alia*, that the proper forum was this Court because the appeal originated as an administrative agency decision and XL was required to follow the procedures set forth in Code § 33.1-192.1, which in turn mandates compliance with Code § 33.1-386.  Id. at 372, 611 S.E.2d at 361-62.[4]  Thus we address the remaining issues raised.

## II.  ANALYSIS

## A.  SOVEREIGN IMMUNITY

XL first contends that the trial court erred by dismissing its motions for judgment on the ground that they were barred by sovereign immunity.  XL asserts two independent grounds for this claim:  (1) the trial court erred in concluding that no express contract existed between XL and VDOT and (2) the trial court erred in finding that the equitable right of subrogation failed to give XL a remedy against VDOT.  Our analysis of these issues must be guided by the Supreme Court's directives in XL Specialty Insurance Co., 269 Va. at 362, 611 S.E.2d at 356.  In that case

---

[4] XL raised the same six assignments of error before the Supreme Court.  However, the Court only decided the jurisdictional issue, finding that "[b]efore we can address those assignments of error dealing with the actions of the trial court, we must resolve a threshold issue raised by XL.  XL asserts that jurisdiction of this appeal lies with the Court of Appeals."  XL Specialty Insurance Co., 269 Va. at 367, 611 S.E.2d at 359.

Specifically, XL claimed that it was a contractor for purposes of Code § 33.1-387 by virtue of the "tripartite agreement" stemming from the performance bonds and the construction contracts.  Id. at 368, 611 S.E.2d at 359.  The Supreme Court rejected that theory.  Id. at 369, 611 S.E.2d at 360.  XL argued in the alternative that it qualified as a contractor based on the doctrine of equitable subrogation.  Id.  However, the Supreme Court determined that the doctrine of equitable subrogation provided no foundation for qualifying XL as a contractor.  Id. at 371, 611 S.E.2d at 362.

- 4 -

the Supreme Court specifically found, as a necessary component of addressing the issue of jurisdiction, that there was no express contract between XL and VDOT and that the right of equitable subrogation provided no basis for a remedy.

VDOT's plea of sovereign immunity was made as a plea in bar, and thus we must accept the averments in the motions for judgment as true and rely solely on the pleadings. Tomlin v. McKenzie, 251 Va. 478, 480, 468 S.E.2d 882, 884 (1996). The decision that sovereign immunity barred XL's claims is a legal determination, to be reviewed *de novo* by this Court. Sheets v. Castle, 263 Va. 407, 410, 559 S.E.2d 616, 618 (2002).

XL first contends that an express contract between XL and VDOT exists because of the tripartite relationship between XL, VDOT, and Bravos and, thus, sovereign immunity does not bar the actions. In support of its claim, XL cites Wiecking v. Allied Medical Supply Corp., 239 Va. 548, 551, 391 S.E.2d 258, 260 (1990) (holding that sovereign immunity is no bar to valid contract actions against the Commonwealth). XL concedes that there is no direct contract between it and VDOT but bases the requisite connection on its "tripartite agreement" hypothesis.

XL notes that three express contracts exist for each construction project: the original construction contract, the surety agreement, and the takeover agreement. XL argues that because the surety relationship is a "tripartite agreement" with rights and obligations for all parties, even though XL and the Commonwealth never had a signed contract until the takeover agreement, an express contract still exists. Some of these obligations include the Commonwealth's duties to protect contract funds and to prevent improper disbursement of such funds. Southwood Builders, Inc. v. Peerless Insurance Co., 235 Va. 164, 170, 366 S.E.2d 104, 107 (1988); American Surety Co. v. Plank & Whitsett, Inc., 159 Va. 1, 10, 165 S.E. 660, 663 (1932). If XL had failed to perform, VDOT would have been entitled to enforce the surety obligations in court because the bond was made for the benefit of VDOT. First Virginia Bank-Colonial v. Baker,

225 Va. 72, 77, 301 S.E.2d 8, 11 (1983); Aetna Casualty & Surety Co. v. Earle-Lansdell Co., 142 Va. 435, 451, 129 S.E. 263, 267 (1925). Moreover, a surety can look back to the date the bond was issued to ensure the obligee's compliance with the contract. International Fidelity Insurance Co. v. Ashland Lumber Co., 250 Va. 507, 511, 463 S.E.2d 664, 667 (1995). Not only do the parties have reciprocal obligations, but it is well-settled law in Virginia that the terms of the bond must be read together with the construction contract to fully understand the extent of all parties' responsibilities. New Amsterdam Casualty Co. v. Moretrench Corp., 184 Va. 318, 324, 35 S.E.2d 74, 77 (1945).

However, the Supreme Court in its remand opinion specifically rejected the tripartite agreement theory. "[N]either the contracts nor the record here support a conclusion that the performance bond and construction contract created an express contract between VDOT and XL." XL Specialty Insurance Co., 269 Va. at 369, 611 S.E.2d at 360. In its analysis, the Supreme Court reviewed the cases cited by XL. Id. at 368, 611 S.E.2d at 359. The Court determined that "none of these cases, however, held that a direct contractual relationship is established between non-signatories to these contracts by virtue of related rights and duties that arise from such separate contracts." Id. The Court cited approvingly the decisions of other courts that hold "that the rights and duties arising from such separate contracts do not create a contractual relationship." Id. Thus, there was no express contract between XL and VDOT that would abrogate the Commonwealth's claim of sovereign immunity.

XL next contends that, failing the establishment of a direct contractual relationship, the doctrine of equitable subrogation provides the contractual nexus to withstand a claim of sovereign immunity by the Commonwealth. The Supreme Court also rejected this theory. Noting that they had "not previously considered whether a surety advancing a claim relating to the construction contract based on equitable subrogation is a 'contractor' for purposes of Code

§ 33.1-387," the Supreme Court concluded that the doctrine of equitable subrogation does not qualify XL as a "contractor" for the purposes of that statute. Id. at 370, 611 S.E.2d at 361. The Court analyzed federal cases holding that equitable subrogation did not qualify a surety as a "contractor" for purposes of the federal Contract Disputes Act. Id. at 371, 611 S.E.2d at 361 (citing Fireman's Fund Insurance Co. v. Secretary of the Navy, 313 F.3d 1344, 1351 (Fed. Cir. 2002); Admiralty Construction Co. v. Dalton, 156 F.3d 1217, 1221 (Fed. Cir. 1998)). The Court also noted that statutes in abrogation of sovereign immunity "must be strictly construed." Id.

Sovereign immunity is a firmly established doctrine in Virginia. Virginia Board of Medicine v. Virginia Physical Therapy Ass'n, 13 Va. App. 458, 464, 413 S.E.2d 59, 63 (1991). Waivers of sovereign immunity must be clearly expressed and will not be implied from general statutory language. Id. at 465, 413 S.E.2d at 63.

Code § 8.01-192 reflects the Commonwealth's limited consent to be sued in contract cases. Wiecking, 239 Va. at 551, 391 S.E.2d at 260. A policy allowing contractual suits against the Commonwealth is long-standing in the Commonwealth:

> With respect to the remedy, we have construed Code § 8.01-192 and its statutory predecessors as the Commonwealth's general consent to be subjected to suit in its own courts in contract cases. Stuart, Gov. v. Smith-Courtney Co., 123 Va. 231, 234, 96 S.E. 241, 242 (1918); Parsons v. The Commonwealth, 80 Va. 163, 167 (1885). In Higginbotham's Ex'x v. Commonwealth, 66 Va. (25 Gratt.) 627, 637 (1874), Judge Bouldin, writing for the Court, observed that it has been, since 1778, the "cherished policy of Virginia" to allow to citizens "the largest liberty of suit against herself" in contract cases.

Wiecking, 239 Va. at 552-53, 391 S.E.2d at 261. The waiver of sovereign immunity, though, is predicated on an express contract. The requisite contractual foundation is a "valid contract[] entered into by duly authorized agents of the government." Id. at 551, 391 S.E.2d at 260. The rationale of Wiecking is that "when the *state contracts* for goods or services, receives the benefit of the contract, and then refuses to honor its obligations, the contractor's property is subjected to

an unconstitutional taking." Id. (emphasis added). Further, "to hold that the state may enter into a valid contract and yet retain the power to avoid its obligation would entail an obvious contradiction." Id. at 552, 391 S.E.2d at 260. This clearly contemplates a direct contractual relationship.

Consequently, courts have not extended the Commonwealth's waiver of sovereign immunity for contractual suits to equitable remedies absent an explicit statutory waiver. In Flory v. Commonwealth, 261 Va. 230, 541 S.E.2d 915 (2001), the Supreme Court addressed whether the Procurement Act waived sovereign immunity for the equitable claims of *quantum meruit* and contracts implied in law. Id. at 236, 541 S.E.2d at 918. The Court held that the "Commonwealth's common law liability for its contracts does not encompass quasi-contractual claims, and *any relief based on such claims must be authorized through a statute abrogating the Commonwealth's sovereign immunity*." Id. at 237, 541 S.E.2d at 918 (emphasis added); see also Commonwealth v. Pierce's Adm'r, 25 Va. (4 Rand.) 432, 437 (1826) (holding that an equitable demand against the Commonwealth must be based on some existing law and will not be implied).

A claim for equitable subrogation, then, is barred by sovereign immunity unless there is a specific statutory waiver. Code § 33.1-387 provides a procedure for contractors to bring civil claims against the Commonwealth; however, the Supreme Court specifically noted that XL can not bring a claim under Code § 33.1-387 because it only applies "to those entities that have a direct contract with VDOT. This construction is consistent with the statutory framework for filing contract-based claims against VDOT." XL Specialty Insurance Co., 269 Va. at 371, 611 S.E.2d at 361. XL was not a party to the contract between Bravos and VDOT. Rather, the Court noted that Code § 33.1-192.1 applied to XL because it "was an entity 'claiming under' the contractor on a contract executed with VDOT." Id. at 372, 611 S.E.2d at 361. That section

provides that no suits shall be brought by a contractor "or any persons claiming under him" "unless the claimant shall have exhausted the review process provided by § 33.1-386."[5] Code § 33.1-192.1.

While Code § 33.1-192.1 requires contractors and those claiming through contractors to follow the procedures set forth in Code § 33.1-386, it does not explicitly provide for a right to sue the Commonwealth. In contrast, Code § 2.2-4364(E) specifically addresses the right of a contractor to sue the Commonwealth. It states that "a contractor may bring an action involving a contract dispute with a public body," but it makes no mention of anyone claiming through the contractor. The General Assembly noted that this section was limited to contractors and excluded subcontractors or suppliers and failed to change the wording. H.J. Res. 229, 2000 Gen. Assem., Reg. Sess. (Va. 2000).

The Supreme Court noted that "[p]rocedures for the processing of such contract claims and enforcement of such claims affect the remedy, 'not the validity of the obligation on which the claim is based.'" XL Specialty Insurance Co., 269 Va. at 371 n.3, 611 S.E.2d at 361 n.3 (quoting Wiecking, 239 Va. at 552, 391 S.E.2d at 261). Procedures for the processing and

---

[5] Code § 33.1-192.1 provides, in part, that

> [n]o suit or action shall be brought against the Department of Transportation by a contractor or any persons claiming under him . . . or by others on any claim arising from the performance of the contract by the contractor, subcontractor or person furnishing materials to the contractor, unless the claimant shall have exhausted the review process provided by § 33.1-386.

Code § 33.1-386 mandates a procedure for contractors to follow when bringing a claim against VDOT. The contractor must submit a written claim for any amount due within sixty days of VDOT's final estimate. Within ninety days, VDOT is to make an investigation and notify the claimant of its determination. If the claimant is not satisfied, he or she has thirty days to notify the Commonwealth Transportation Commissioner that he or she wishes to make an appearance. The Commissioner will schedule an appearance within thirty days. Within forty-five days of that meeting the Commissioner will notify the claimant of his decision.

enforcing of claims do not create a right, but simply provide a mechanism for protecting an already existing right. Wiecking, 239 Va. at 552, 391 S.E.2d at 261.

Code § 33.1-192.1 is similar to the code section analyzed in Flory, 261 Va. at 237, 541 S.E.2d at 918. That case concerned Code § 8.01-192, which delineates the procedure for individuals to follow when their claim is disallowed by the Comptroller. The Court determined that the "statutes contain procedural requirements setting out the manner in which a claim is presented. Neither section establishes the claimant's right to lodge a claim against the sovereign or the sovereign's liability for [a quasi-contractual] claim." Id.

When statutory language abrogating sovereign immunity in other instances is compared with Code § 33.1-192.1, it is clear that there is no waiver of sovereign immunity in the instant case where the claim is not based on a direct contract between the Commonwealth and the claimant but is rather equitable in nature. "The right of subrogation is not founded on contract. It is a creation of equity; is enforced solely for the purpose of accomplishing the ends of substantial justice, and is independent of any contractual relations between the parties." Aetna Life Insurance Co. v. Middleport, 124 U.S. 534, 550 (1988) (citation omitted). Code § 2.2-4364(E) grants a right: "a contractor *may bring an action*." (Emphasis added). The Virginia Tort Claims Act proclaims the liability of the Commonwealth: "the Commonwealth *shall be liable* for claims." Code § 8.01-195.3 (emphasis added). Administrative agencies are subject to suit in particular circumstances: "[a]ny person affected by and claiming the unlawfulness of any regulation . . . *shall have a right to the direct review thereof* by an appropriate and timely court action." Code § 2.2-4026 (emphasis added). On the other hand, Code § 33.1-192.1 simply describes a procedure that must be followed: "[n]o suit or action shall be brought . . . unless the claimant shall have exhausted the review process provided by § 33.1-386."

Thus, we agree with the trial court that XL's claim is barred by sovereign immunity. Whether or not Code § 33.1-387 provides a remedy or merely a procedure, the Supreme Court has held that proceeding under that code section is not the proper course of action for XL because XL is not a "contractor" for the purposes of that statute. XL Specialty Insurance Co., 269 Va. at 371-72, 611 S.E.2d at 361-62. Rather, the Court required XL to proceed according to the process set forth in Code § 33.1-192.1—a procedural statute that does not waive the Commonwealth's sovereign immunity to the claim of equitable subrogation.

Accordingly, XL's claims are barred by sovereign immunity.

## B. LEAVE TO AMEND

Next, we must determine whether the trial court erred in failing to allow XL to amend its motions for judgment to include a count grounded in its relationship with VDOT based on the "takeover agreements." We hold that under the facts of this case, it did.

Rule 1:8 provides that leave to amend shall be "liberally granted in furtherance of the ends of justice"; however, such a matter is within the discretion of the trial court. Kole v. City of Chesapeake, 247 Va. 51, 57, 439 S.E.2d 405, 409 (1994). Therefore we review for abuse of discretion. Hetland v. Worcester Mutual Insurance Co., 231 Va. 44, 46, 340 S.E.2d 574, 575 (1986).

Where granting a motion for leave to amend would not prejudice the other party, an amendment should be allowed. Kole, 247 Va. at 57, 439 S.E.2d at 409 (trial court abused its discretion in failing to allow an amendment alleging facts sufficient to withstand a plea of the statute of limitations). Accord Peterson v. Castano, 260 Va. 299, 303, 524 S.E.2d 736, 738-39 (2000) (trial court erred by denying leave to amend the *ad damnum* clause); Mortarino v. Consultant Engineering Services, Inc., 251 Va. 289, 295-96, 467 S.E.2d 778, 782 (1996) (trial court abused its discretion when it disallowed appellant to amend his motion for judgment to

allege facts sufficient to support a cause of action for fraud).  The trial court must also consider the moving party's interest in being fully compensated in order to ensure "a litigant's right to a fair trial."  Peterson, 260 Va. at 303-04, 534 S.E.2d at 738-39.

XL's two motions for judgment were based on the bond between XL and Bravos and the contract between Bravos and VDOT.  XL averred that VDOT breached its contract with Bravos by paying for work that was not performed or not satisfactorily completed.  The takeover agreements, an integral part of the relationship between XL and VDOT, specifically referred to the bonds and contracts and provided that XL would complete the work and VDOT would pay XL according to the terms of the two original documents.[6]  The agreements were entered into in October 1999.

VDOT would not be prejudiced by an amendment to the pleadings allowing XL to claim breach of the takeover agreements because the agreements essentially reiterate XL's obligations under the bond and the terms of the contract between VDOT and Bravos.  The takeover agreements are, in fact, the express contracts between XL and the Commonwealth that provide the basis, if any, for its contract claim.  Moreover, at the time the motions for judgment were filed, VDOT had notice of the agreements as it was a party to them in 1999.  See Travelers Indemnity Co. v. United States, 16 Cl. Ct. 142, 154 (1988) (construction contract incorporated by reference in the takeover agreement).  Where an amendment would cure a defect in pleadings, leave to amend should not be refused simply because, without it, the litigant stated an imperfect cause of action.  See Mortarino, 251 Va. at 295-96, 467 S.E.2d at 782.  Thus we hold that the trial court abused its discretion in failing to allow the amendment and give XL its day in court.

---

[6] Paragraph 8 of the Motions for Judgment states, *inter alia*:  "Under the Takeover Agreement, XL reserved all its rights, remedies and defenses of itself and Bravos.  A true and accurate copy of the Takeover Agreement is attached hereto and incorporated by reference as Exhibit 3."

- 12 -

We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

<u>Affirmed, in part, reversed, in part, and remanded.</u>

Bumgardner, J., dissenting.

I dissent from the holding that XL Specialty Insurance Company is asserting a claim for equitable subrogation that the doctrine of sovereign immunity bars. I would reverse the trial court on both issues.

Bravos Concrete, Inc. entered two contracts with the Commonwealth of Virginia Department of Transportation for the construction of two separate highway projects. The Commonwealth required Bravos to provide for performance bonds, which XL Specialty Insurance Company furnished. Bravos defaulted, and the Commonwealth made demand on XL for performance. XL completed the projects and filed claims for the amounts it discovered the Department had overpaid Bravos.

XL asserts a claim for breach of rights owed it by the Commonwealth that arise from the duties owed by a primary obligee to its surety. XL is not asserting the rights of Bravos to which it is entitled by subrogation. It is not asserting an equitable remedy. It is asserting a right owed directly to it under the law of suretyship.

A suretyship relationship existed between the Commonwealth, Bravos Concrete, and XL. It arose from two bilateral contracts: the primary obligation that existed between Bravos Concrete and the Commonwealth; and the secondary obligation that existed between XL and Bravos Concrete. The Commonwealth was the intended beneficiary of the contract between Bravos Concrete and XL for the performance bond.

Suretyship is a status that created specific rights and duties that ran between the Commonwealth and XL. It afforded the Commonwealth the right to enforce the contract directly against XL. Correspondingly, it granted XL certain defenses to the claims that the Commonwealth could bring against it on its bond. Critical suretyship defenses arise if the primary obligee does an act that increases the risk of loss to the surety. An act that increases the

risk of loss impairs the suretyship status and discharges the surety from its duty of performance. The protection against impairment of suretyship status also gives the surety a claim against the principal obligee to the extent the impairment would have discharged the surety from performance. Restatement (3d) Suretyship and Guarantee § 37(4), at 159 (1996).

Case law in the Commonwealth comports with the Restatement (3d) Suretyship and Guarantee (1996). American Surety Co. v. Plank & Whitsett, Inc., 159 Va. 1, 165 S.E. 660 (1932), held: "Payments of substantial sums before they are due, or failure to retain the required percentage, are generally held to be such variations in the terms of the contract as will discharge the surety from its obligation to the owners." Id. at 10, 165 S.E. at 663. Southwood Builders, Inc. v. Peerless Ins. Co., 235 Va. 164, 366 S.E.2d 104 (1988), affirmed the discharge of the surety where the beneficiary of the builder paid the subcontractor before the sums were due. Board of Supervisors of Fairfax Co. v. Southern Cross Coal Corp., 238 Va. 91, 380 S.E.2d 636 (1989), held the defense of material deviation is an affirmative defense against a claim brought by the principal obligee against the surety on a bonded obligation.

In this case, the Commonwealth has raised the defense of sovereign immunity to a civil action alleging it overpaid Bravos Concrete. The action stated a claim for breach of a duty owed by the Commonwealth to XL. The Commonwealth's duty arose from its status as the intended beneficiary of Bravos Concrete's contract with XL for a performance bond. XL was asserting its own rights; not the rights of another acquired by subrogation.

XL's claim arose out of the law of suretyship that protected it from impairment of its status as a surety. The rights constituted an affirmative defense to any suit by the Commonwealth brought to enforce its contract rights to performance by its surety. As the intended beneficiary of Bravos Concrete's contract with XL, the Commonwealth acquired rights to performance by the surety. However, it also incurred the duty to the surety not to impair its

status as surety. Acting to impair the surety's status would discharge the surety from the performance it owed the Commonwealth. Those reciprocal rights and duties arise from law of suretyship. They directly defined the scope of the Commonwealth's contractual right to performance by XL and the extent of XL's contractual obligation to perform.

"A surety's rights are defined by the express terms of the contract that gives rise to the suretyship relationship as well as by common law rights that supplement the parties' undertaking." Peter A. Alces, The Law of Suretyship and Guaranty § 2.2 (Thompson West, 2003) (citing Restatement (3) § 17). The rights arise "as a matter of status in the transaction rather than by express agreement." Restatement (3d) Suretyship and Guarantee § 1, at 6.

Sovereign immunity does not apply to actions based upon contracts. Wiecking v. Allied Medical Supply Corp., 239 Va. 548, 551, 391 S.E.2d 258, 260 (1990), held: "The doctrine of sovereign immunity is 'alive and well' in Virginia, as a defense to actions in tort, but we have never extended that defense to actions based upon valid contracts entered into by duly authorized agents of the government." (Citation omitted.)

The doctrine of sovereign immunity should not bar the claims of XL Insurance. The claim seeks to enforce a duty owed XL arising from the suretyship status created by a valid contract made by the Commonwealth. XL does not assert a claim for subrogation or for equitable subrogation, nor does it assert an equitable remedy where no contract at law exists. It brings an action asserting rights arising from valid contracts that the Commonwealth sought, negotiated, and entered. The doctrine of sovereign immunity is not meant to protect the Commonwealth from its contracts. "[S]ince 1778, the 'cherished policy of Virginia' [is] to allow to citizens 'the largest liberty of suit against herself' in contract cases." Id. at 553, 391 S.E.2d at 261 (citing Higginbotham's Ex'x v. Commonwealth, 66 Va. (25 Gratt.) 627, 637 (1874)). Accordingly, I respectfully dissent from the majority opinion on that issue.