ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Safeco Insurance Company of America | ) ASBCA No. 60952 |
| | ) |
| Under Contract No. W912HN-08-D-0042 | ) |

APPEARANCES FOR THE APPELLANT:   John S. Vento, Esq.
  Trenam Law
  Tampa, FL

  Brett D. Divers, Esq.
  Mills Paskert Divers
  Tampa, FL

APPEARANCES FOR THE GOVERNMENT:   Thomas H. Gourlay, Jr., Esq.
  Engineer Chief Trial Attorney
  A. L. Faustino, Esq.
  Robert W. Scharf, Esq.
  Engineer Trial Attorneys
  U.S. Army Engineer District, Sacramento

OPINION BY ADMINISTRATIVE JUDGE CLARKE ON THE
GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

The U.S. Army Corps of Engineers (COE) moves for dismissal due to lack of jurisdiction. The COE asserts that Safeco Insurance Company of America (Safeco) did not have a contract with the government and therefore the Board lacks jurisdiction under the Contract Disputes Act, 41 U.S.C. §§ 7101-7109 (CDA). Safeco argues that the Board has jurisdiction over its equitable subrogation claim and an implied-in-fact contract based on the contracting officer's final decision (COFD), an escrow agreement, a modification directing payments into the escrow account, payments into the escrow account, and other matters. We grant the COE's motion.

STATEMENT OF FACTS (SOF) FOR THE PURPOSES OF THE MOTION

1. Task Order No. CM01 under Contract No. W912HN-08-D-0042 was issued to I.L. Fleming, Inc. (Fleming) on 26 April 2010 for the design and construction of a Brigade/Battalion Headquarters at Fort Polk, Louisiana (R4, tab 3). Safeco issued a Payment Bond (R4, tab 6) and a Performance Bond (R4, tab 7) as surety for the contract.

2. Fleming, Engineering Design Technologies, Inc. (EDT), PBS&J Constructors, Inc. (PBS&J), and U.S. Bank National Association, escrow agent, entered into an Escrow Agreement as of 17 February 2011 (app. supp. R4, tab 1). Pursuant to this agreement Fleming agreed to direct the COE to deposit all payments made to Fleming into the escrow account (*id.* at 1).

3. By letter dated 16 June 2011 to Ms. Grant, COE contracting officer (CO), Safeco's attorneys, Mills Paskert Divers (MPD), inquired as follows:

> It is Safeco's understanding that an escrow account has been established with U.S. Bank for all contract [W912HN-08-D-0042] proceeds and that the USACE is making payments of all contract proceeds due to Fleming into that account. If this understanding is incorrect, please let me know in writing at your earliest opportunity since it is Safeco's expectation that the·USACE is paying all contract proceeds into the U.S. Bank escrow account.

(R4, tab 9)

4. By letter dated 13 July 2011 to CO Dones, COE, MPD inquired as follows:

> As you know from my prior communications, it is Safeco's understanding that all payments due on the above-referenced contract [W912HN-08-D-0042] were to be paid into an escrow account with U.S. Bank. Safeco has reason to believe that funds may no longer be going to such escrow account. Please inform Safeco of the bank account into which contract funds for this Project are currently being directed and an approximate date for the next payment. In addition, Safeco requests that the Corps not release any funds to Fleming without Safeco's written consent. Please direct such requests for Safeco's consent to my attention.

(R4, tab 10)

5. On 18 July 2011, Mr. Vento, PBS&J's attorney, sent an email to Mr. Henson, COE, with a copy to CO Dones, expressing concern that subcontractors

2

would not be paid if the COE did not change the CAGE[1] code to insure payments went to U.S. Bank escrow (R4, tab 24 at 2).

6. By letter dated 22 July 2011 to Mr. Henson, MPD wrote:

> As stated in my letter to the Contracting Officer, Ms. Dones, on July 13, 2011, it is the understanding of Safeco that all payments due on the above-referenced contract were to be paid into an escrow account with U.S. Bank, CAGE code 6CN69. All funds must be paid into this escrow account with this CAGE code to ensure proper payment of the contract proceeds.

(R4, tab 13 at 1)

7. Unilateral Modification No. 04, dated 22 July 2011, was signed by CO Dones (R4, tab 12). The modification stated, "The purpose of this modification is to update the contractor's CAGE code from 1UV34 to 6CN69 per Escrow Agreement dated 17 February 2011" (*id.* at 1).

8. Beginning on 23 August 2011 through 8 August 2014, the COE made 15 payments to the U.S. Bank escrow account, CAGE Code 6CN69 (R4, tab 17). The project was completed on 11 July 2012 (R4, tab 26 at 3).

9. On 13 August 2014 a payment of $56,073.84 was returned to the COE because of an "Invalid bank account number" (R4, tab 19). By email dated 15 August 2014 to "ilflem@aol.com," Ms. Vaughan, COE Finance Center, stated that a payment of $58,500.00 was returned to the Finance Center because CAGE Code 6CN69 had expired (R4, tab 20). In her final decision CO Meares explained that the $56,073.84 was an offset of $2,426.16 from the $58,500.00 (R4, tab 26 at 4, ¶ 28).

10. The record includes a "DIRECT DEPOSIT AUTHORIZATION" form dated 2 September 2014 that references Cage Code 6CN69 and Fleming that authorizes deposit in a checking account at Georgia Coastal Federal Credit Union, Brunswick, Georgia (R4, tab 21). In her final decision CO Meares states that the form was signed by Fleming (R4, tab 26 at 4, ¶ 27).

---

[1] The CAGE Code is the "Commercial and Government Entity" code, a unique identifier assigned to suppliers of defense agencies as well as government agencies themselves. FAR 4.1801(a).

3

11. On 14 September 2014 the COE made payment to Fleming in the amount of $56,073.84 (R4, tab 26 at 4, ¶ 28; app. mot. at 4). The history behind this payment was explained in an email dated 30 October 2015 from CO Yarbro to Mr. Vento:

> 3. Payment of $56,073.84 (offset $2,426.15; original amount $58,500.00) was processed on 8 August 2014 by EFT to US Bank to account ending in 7365. This payment was returned to the USACE Finance Center due to a closed account. The CAGE code 6CN69 was expired in SAM (System for Award Management). On 15 August 2014 an email was sent to IL Fleming from the USACE Finance Center stating that this payment was returned to the Finance Center due to a closed account. In the same email, the USACE Finance Center provided Mr. Fleming a Direct Deposit form and requested he update SAM with current payment information. On 2 September 2014 a Direct Deposit Authorization UFC Form 23 (attached) was submitted by I.L. Fleming to the USACE Finance Center changing the bank account to Georgia Coastal Federal Credit Union account number ending in 1132. The final EFT payment in the amount of $56,073.84 (offset $2,426.15; original amount $58,500.00) was made to IL Fleming to the Georgia Coastal Federal Credit Union on Sept 12, 2014 to acct ending in 1132.

(R4, tab 23 at 1)

12. By email dated 2 November 2015 to Mr. Heath, COE Finance Center, Mr. Vento stated:

> [I]f I read this correctly, the Corps made an improper payment of $56,000 to IL Fleming on 2 Sept 2014 after the Corps received a Hold Funds Letter from SAFECO on 13 July 2011 (attached) advising that no further funds should be paid to IL Fleming to ensure that subcontractors on the project would be properly paid.

(R4, tab 24 at 1)

13. On 23 August 2016 Safeco filed a certified claim in the amount of $57,073.84 which was the sum of the $56,073.84 and $1,000.00 contract balance (R4, tab 25). On 8 December 2016 CO Meares denied Safeco's claim. The decision included a notice of appeal procedure that referred to the CDA. (R4, tab 26)

4

14. On 20 December 2016 Safeco filed a notice of appeal with the Board requesting that it be processed under Board Rule 12.3 accelerated procedure. On 22 December 2016 the Board docketed the appeal under Rule 12.3 as ASBCA No. 60952. On 28 February 2017 the government filed a motion to dismiss for lack of jurisdiction. On 7 March 2017 Safeco withdrew its Rule 12.3 election in order to have the jurisdictional issue resolved.

## DECISION

Safeco characterizes its cause of action in its complaint as being equitable subrogation (*see* compl.). As the government correctly argues (*see* gov't br. 3-4), we do not possess jurisdiction over equitable subrogation claims because our jurisdiction stems from the CDA, which requires a contract between the appellant and the United States. *United Pacific Insurance Co.*, 380 F.3d 1352, 1355 (Fed. Cir. 2004); *see also Fireman's Fund Insurance Co. v. United States*, 909 F.2d 495 (Fed. Cir. 1990) (before the execution of a takeover agreement,[2] a surety is not a contractor with the United States); *Thorington Electrical and Construction Co.*, ASBCA No. 56895 *et al.*, 10-2 BCA ¶ 34,511 at 170,177. While Safeco cites law from the Court of Federal Claims and the Court of Appeals for the Federal Circuit in support of its theory that we possess such jurisdiction (app. opp'n at 6), the cases cited by Safeco are founded upon the Court of Federal Claims's grant of jurisdiction through the Tucker Act, *see Insurance Company of the West*, 243 F.3d 1367, 1374-75 (Fed. Cir. 2001), which is specific to that forum, and not applicable to this Board. *See* 28 U.S.C. § 1491.

In its response to the government's motion to dismiss, Safeco appears to secondarily allege that its equitable subrogation theory should be read as an allegation that it possessed an implied-in-fact contract with the government – a contract over which we would possess jurisdiction (app. opp'n at 10-11). We are unpersuaded by this strained re-formulation of Safeco's position. First, no allegation of an implied-in-fact contract may be found in either Safeco's complaint or in its claim to the contracting officer upon which this appeal is premised (*see* gov't br., attach. 1). It thus has no implied-in-fact contract cause of action before us (not being found in the complaint), nor could it, because the necessary operative facts alleging an implied-in-fact contract were not contained within its claim. *See Scott Timber Co. v. United States*, 333 F.2d 1358, 1365 (Fed. Cir. 2003); *Trepte Construction Co.*, ASBCA No. 38555, 90-1 BCA ¶ 22,595 at 113,385-86.

In the event that we, nevertheless, permitted Safeco to proceed under its newly-advanced implied-in-fact contract theory, we would still dismiss this appeal for

---

[2] There is no allegation that the United States and Safeco ever entered into a takeover agreement in this matter.

Safeco's failure to make a non-frivolous allegation of the existence of the implied-in-fact contract.

It is well established that Safeco bears the burden of establishing the Board's jurisdiction by a preponderance of the evidence. *Total Procurement Service, Inc.*, ASBCA No. 53258, 01-2 BCA ¶ 31,436 at 155,237. However, this burden is met if Safeco makes "non-frivolous" allegations of an offer, acceptance, consideration and contracting authority. *Leviathan Corp.*, ASBCA No. 58659, 16-1 BCA ¶ 36,372 at 177,294. Safeco need not prove the existence of a contract, which is a merits determination. *Id.* From this precedent we gather that an appellant must present at least some plausible evidence of a contract to satisfy both the "preponderance of the evidence" standard and the "non-frivolous" allegation standard.

An implied-in-fact contract has all the requirements of an express contract except that the evidence of the meeting of the minds differs. *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003). Thus:

> To establish an implied-in-fact contract with the government, appellant must show mutuality of intent to contract, consideration, lack of ambiguity in offer and acceptance, and that the government representative whose conduct is relied upon had actual authority to bind the government in contract. *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990), *cert. denied*, 501 U.S. 1230 (1991).

*Todd Pacific Shipyards Corp.*, ASBCA No. 55126, 08-2 BCA ¶ 33,891 at 167,755. We do not agree with Safeco's belief that an implied-in-fact contract may simply be "inferred from the government's conduct" here (app. opp'n at 10). We have held that a contract's requirement for payment and performance bonds does not imply a contract between the government and the bondsman. *Fireman's Fund*, 909 F.2d at 500. Safeco does not limit its implied-in-fact contract argument to payment and performance bonds.

The actions that Safeco alleges made such a contract are as follows:

> [P]ursuant to Safeco's demand, [conveyed by the contractor actually doing business with the government, Fleming (app. opp'n at 2)] the COE executed a Contract Modification that referenced Safeco's Escrow Agreement and promised to make payments to the Escrow

6

> Account...the COE...made fourteen (14)[3] consecutive payments over a span of two (2) years to the Escrow Account established by Safeco to protect the Project funds...in reliance on payments made to the Escrow Account, the subcontractors completed their work on the Project.

(App. opp'n at 11) For the purpose of deciding this motion, we assume that each of these allegations is true.

The key determination, therefore, is if these itemized factual allegations amount to a "non-frivolous" allegation of an implied-in-fact contract. To reach our decision we look at other decisions involving similar jurisdictional motions. In *Tech Projects, LLC*, ASBCA No. 58789, 15-1 BCA ¶ 35,940, we denied a motion to dismiss for lack of jurisdiction because the contracting officer's final decision agreed that there was an implied-in-fact contract. *Id.* at 175,661. In *Black Tiger Co.*, ASBCA No. 59819, 16-1 BCA ¶ 36,423, we denied a government motion to dismiss for lack of jurisdiction because the "notice of appeal included (1) a contract number; (2) an SF 1449 that identified appellant on the first page of the contract as the contractor; and (3) a document appellant asserted was an invoice for the equipment provided under the contract." *Id.* at 177,570. In *Leviathan Corp.*, 16-1 BCA ¶ 36,372, we denied a motion to dismiss for lack of jurisdiction because of a contract modification that offered settlement "on behalf of the U.S. Government" and included a release of claims. *Id.* at 177,294. We concluded that in each of these cases appellant had made a "non-frivolous" allegation that a contract existed between it and the government. However, in each case there were facts that indicated a contract existed. We do not see any similarities between these cases and the facts alleged by Safeco. Some of the problems we have are that the COE was not a party to the escrow agreement, Modification No. 04 was unilateral, payment into the escrow account does not imply an intent to enter into a contract, and reliance by subcontractors likewise does not indicate an intent to enter into a contract. The facts itemized above do not relate in any way to any of the elements of an implied-in-fact contract, i.e., mutuality of intent to contract, lack of ambiguity in offer and acceptance, consideration, and that the government representative whose conduct is relied upon had actual authority to bind the government in contract. Safeco has not made a "non-frivolous" allegation that an implied-in-fact contract existed between it and the COE.

---

[3] The evidence is that there were, in fact 15 such payments (*see* SOF ¶ 8), but this distinction is not material.

## CONCLUSION

The Board lacks jurisdiction over Safeco's appeal. The COE's motion is granted and the appeal is dismissed without prejudice for lack of jurisdiction.

Dated: 25 July 2017

CRAIG S. CLARKE
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Acting Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60952, Appeal of Safeco Insurance Company of America, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

8